THE STATE, EX REL. GODFRAY ET AL., *v.*
MCGINTY, DIRECTOR.

(No. 80-217—Decided April 29, 1981.)

*Messrs. Knepper, White, Arter & Hadden* and *Mr. Daniel J. Davis,* for relators.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. David A. Williamson,* for respondent.

*Per Curiam.* A county welfare department is limited to the exercise of only those powers that are clearly and distinctly granted by the General Assembly. See *State, ex rel. Clarke,* v. *Cook* (1921), 103 Ohio St. 465, paragraph two of the syllabus; *State, ex rel. Locher,* v. *Menning* (1916), 95 Ohio St. 97, 99. There is no express statutory authority authorizing a county welfare department to contract out for its parent location services. Cf. R. C. 329.04(B). Thus, the board correctly determined that the welfare department could not contract out for its parent location services.

Respondent argues that a county welfare department has the authority to cooperate with and give financial assistance to other governmental agencies in operating any federal program. Pursuant to R. C. 329.04(F), alleges respondent, a county welfare department can be designated by a board of county commissioners to exercise and perform any powers and duties relating to welfare which the board of county commissioners has. Thus, according to the respondent, since a board can enter into contracts, like those at issue in this case, a welfare department, pursuant to R. C. 307.85(A), also has such authority in the establishing and operating of a federal program. See R. C. 5101.31(A); Social Security Act, Sections 651 *et seq.,* Title 42, U. S. Code.

Assuming, *arguendo,* that respondent's contention is correct, the record is devoid of any evidence demonstrating that the county welfare department had the authority to enter into these contracts. Thus, we need not construe the applicability of R. C. 329.04(F) and 307.85(A).

Relators also seek an award of attorney fees. That request is denied since respondent's conduct does not warrant an award of attorney fees in this case. See *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177.

For the foregoing reasons, relators' request for a writ of mandamus ordering the respondent to comply with the board's order is granted. See *State, ex rel. Osborn,* v. *Jackson* (1976), 46 Ohio St. 2d 41.

*Writ allowed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., dissenting. It is my understanding that a government agency, such as the welfare department, can only act within the limits of its authority as established by statute. However, it is not my understanding that each individual act of a government agency requires a separate statutory authorization. A government agency can receive general authority to act in a particular area.

Pursuant to R. C. 329.04(F), the county welfare department can be designated by the board of county commissioners to exercise and perform any powers and duties relating to welfare which the board has. Under the provisions of R. C. 307.85(A), the board of county commissioners has the following authority:

"The board of county commissioners of any county may participate in, give financial assistance to, and cooperate with other agencies or organizations, either private or governmental, in establishing and operating any federal program enacted by the congress of the United States, and for such purpose may adopt any procedures and take any action not prohibited by the constitution of Ohio nor in conflict with the laws of this state."

Clearly, R. C. 307.85(A) gives the board of county commissioners broad authority to cooperate with and give financial assistance to other government agencies in operating any federal program. By virtue of R. C. 329.04(F), the county welfare department can also have such authority in regard to the operation of federal welfare programs. Accordingly, the welfare department has general statutory authority to contract with other government agencies in the course of operating a federal welfare program.

In the present cause, it is undisputed that the parent loca-

116

tion services performed by the relators constituted an aspect of a federal welfare program. Under the provisions of R. C. 329.04(F) and 307.85(A), the welfare department had general authority to enter into an agreement with another governmental agency, such as the bureau of support, to cooperate in the operation of such a program. For this reason, the contract between the welfare department and the bureau of support for cooperation in carrying out the federal "IV-D" program was authorized by statute.