The STATE ex rel. GALLON & TAKACS CO., L.P.A.

v.

CONRAD, Admr., et al.

[Cite as *State ex rel. Gallon & Takacs Co., L.P.A.
v. Conrad* (1997), 123 Ohio App.3d 554.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APD02–243.

Decided Dec. 4, 1997.

*Gallon & Takacs Co., L.P.A., Jack E. Gallon, William E. Takacs, Jeffrey Julius, Joseph M. D'Angelo* and *Theodore A. Bowman,* for relator.

*Betty D. Montgomery,* Attorney General, and *Dennis Hufstader,* Assistant Attorney General, for respondents.

LAZARUS, Judge.

Relator, Gallon & Takacs Co., L.P.A., has brought this original action in mandamus to compel respondent, James Conrad, Administrator of the Ohio Bureau of Workers' Compensation ("BWC"), to provide copies of "applications for certification filed by certain Managed Care Organizations with the Ohio BWC and copies of each and every document filed by each such organization in support of the organization's application for certification." The matter has been fully briefed and argued on stipulations of fact and is ripe for adjudication.

The public records request comes as a result of legislation in which the Ohio General Assembly directed BWC to develop and implement a managed-care program within the Ohio Workers' Compensation system. See R.C. 4121.44, 4121.441, 4121.442, and 4121.443. The program is known as the Health Partnership Program. R.C. 4121.441; Ohio Adm.Code 4123–6–01(A). The Health

Partnership Program requires that in order to qualify for workers' compensation benefits, injured workers must have their claims medically managed by managed-care organizations ("MCOs")[1] certified by BWC. The Administrator of Workers' Compensation is authorized by statute to adopt rules under R.C. Chapter 119 for the Health Partnership Program. R.C. 4121.441 provides as follows:

"(A) The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission, shall adopt rules under Chapter 119. of the Revised Code for the health care partnership program administered by the bureau of workers' compensation to provide medical, surgical, nursing, drug, hospital, and rehabilitation services and supplies to an employee for an injury or occupational disease that is compensable under this chapter or Chapter 4123., 4127., or 4131. of the Revised Code.

"The rules shall include, but are not limited to, the following:

"(1) Procedures for the resolution of medical disputes between an employer and an employee, an employee and a provider, or an employer and a provider, prior to an appeal under section 4123.511 of the Revised Code;

"(2) Prohibitions against discrimination against any category of health care providers;

"(3) Procedures for reporting injuries to employers and the bureau by providers;

"(4) Appropriate financial incentives to reduce service cost and insure proper system utilization without sacrificing the quality of service;

"(5) Adequate methods of peer review, utilization review, quality assurance, and dispute resolution to prevent, and provide sanctions for, inappropriate, excessive or not medically necessary treatment;

"(6) A timely and accurate method of collection of necessary information regarding medical and health care service and supply costs, quality, and utilization to enable the administrator to determine the effectiveness of the program;

"(7) Provisions for necessary emergency medical treatment for an injury or occupational disease provided by a health care provider who is not part of the program;

---

1. " 'Managed care organization' or 'MCO' means: A vendor as defined under section 4121.44 of the Revised Code who has contracted with the bureau to provide medical management and cost containment services as part of the HPP as provided in sections 4121.44 and 4121.441 of the Revised Code. Any vendor may participate in the HPP as an MCO if it is certified by the bureau pursuant to the rules of this chapter. As used in these rules, a managed care organization is not a health care provider." Ohio Adm.Code 4123–6–01(C).

"(8) Discounted pricing for all in-patient and out-patient medical services, all professional services, and all pharmaceutical services;

"(9) Provisions for provider referrals, pre-admission and post-admission approvals, second surgical opinions, and other cost management techniques;

"(10) Antifraud mechanisms;

"(11) Standards and criteria for the bureau to utilize in certifying or recertifying a health care provider or a vendor for participation in the health partnership program;

"(12) Standards and criteria for the bureau to utilize in penalizing or decertifying a health care provider or a vendor from participation in the health partnership program.

"(B) The administrator shall implement the health partnership program according to the rules the administrator adopts under this section for the provision and payment of medical, surgical, nursing, drug, hospital, and rehabilitation services and supplies to an employee for an injury or occupational disease that is compensable under this chapter or Chapter 4123., 4127., or 4131. of the Revised Code."

Effective February 16, 1996, BWC promulgated rules for MCO participation in the Health Partnership Program, including rules for application for certification. See Ohio Adm.Code Chapter 4123-6. As part of the certification process, MCOs must submit certain information to BWC including, among other things, descriptions of the MCO's structure, process of credentialing providers, quality assurance standards, and treatment guidelines. Ohio Adm.Code 4123-6-032. According to the stipulations of fact, BWC has certified approximately fifty-seven MCOs.

On November 25, 1996, relator made a public records request for copies of certification applications and copies of all documents filed by each MCO in support of its application. BWC denied the request by letter dated December 12, 1996. BWC based its denial of access on a provision contained in Ohio Adm.Code 4123-6-032(H), which provides:

"The bureau shall hold as confidential and proprietary the managed care organization's descriptions of process, methodology, policies, procedures and systems as required for the application for certification."

BWC also relied on an exception in the Public Records Act contained in R.C. 149.43(A), which states:

"(1) 'Public record' means any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except that 'public record' does not mean any of the following:

" * * *

"(o) Records the release of which is prohibited by state or federal law."

BWC does not dispute that the requested documents are records kept by a public office but claims that these records are excepted from the definition of a public record because under BWC's administrative rule they are "[r]ecords the release of which is prohibited by a state or federal law." R.C. 149.43(A)(1)(o).

Relator contends that BWC's confidentiality provision conflicts with the Public Records Act and, in the absence of an explicit grant from the legislature prohibiting disclosure, BWC lacks the authority to exempt its records from the public records statute. The task before us, then, is to examine the relevant statutory law to determine the source and scope of BWC's authority to exempt certain certification materials from the purview of the public records statute.

It is well settled that Ohio's public records law, R.C. 149.43, is to be construed liberally to facilitate broad access to public records, exceptions are to be strictly interpreted, and any doubt as to the applicability of an exception is to be resolved in favor of disclosure. *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 643 N.E.2d 126; *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 684 N.E.2d 1239; *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 678 N.E.2d 557; and *State ex rel. Nat. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786. "[I]nherent in R.C. 149.43 is the fundamental policy of promoting open government, not restricting it." *State ex rel. Miami Student v. Miami Univ.* (1997), 79 Ohio St.3d 168, 171, 680 N.E.2d 956, 959. The burden of proving that a record is exempt from disclosure is upon the governmental agency asserting the exception. *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 169, 637 N.E.2d 911, 911–912.

At oral argument, BWC advanced the argument that allowing application materials to be made public would narrow the field of MCOs willing to participate in the program. BWC claims that some MCOs may be reluctant to participate in the Health Partnership Program if the details of their business procedures are made available to the public and their competitors. Similar arguments have been considered and rejected by the Ohio Supreme Court. In *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 661 N.E.2d 187, the city of Cleveland argued that it was necessary to keep confidential the names and resumes of candidates for chief of police. The city claimed that revealing the names and applications of the candidates would narrow the field of applicants, harm unsuccessful candidates, and ultimately prejudice the interests of good government. The Supreme Court rejected the policy argument noting that "[t]he court has consistently rejected similar policy arguments as matters resolved by the General Assembly's enumeration of very narrow, specific exceptions to R.C.

149.43." *Id.* Again, in *James, supra,* 70 Ohio St.3d at 172, 637 N.E.2d at 913–914, the court stated:

"[I]n enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure."

BWC's policy concerns alone, while understandable, are insufficient to support exclusion from application of the Public Record's Act.

BWC's primary argument against disclosure is that its administrative rule was properly promulgated in accordance with R.C. Chapter 119 and, therefore, is to be given the full force and effect of law. BWC claims that there is no conflict between the public records statute and its own administrative rule, because a properly promulgated administrative rule is state law for purposes of the exception to the public records statute contained in R.C. 149.43(A)(1)(o) and, therefore, under state law, the bureau is prohibited from disclosing the records sought by relator.

 BWC is correct in asserting that an administrative rule adopted pursuant to statutory authority has the force of law unless the rule is unreasonable or in clear conflict with statutes governing the same subject matter. *State ex rel. DeBoe v. Indus. Comm.* (1954), 161 Ohio St. 67, 53 O.O. 5, 117 N.E.2d 925, paragraph one of the syllabus; *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 48, 554 N.E.2d 97, 99–100; *Columbus & S. Ohio Elec. Co. v. Indus. Comm.* (1992), 64 Ohio St.3d 119, 592 N.E.2d 1367. However, only valid rules have the force of law, and the validity of any administrative rule must be determined by reference to the statutes governing the agency. It is axiomatic that an administrative agency has no existence or authority beyond the statutes and may exercise only powers that are clearly granted by the General Assembly. *State ex rel. Godfray v. McGinty* (1981), 66 Ohio St.2d 113, 20 O.O.3d 100, 419 N.E.2d 1102.

For example, in *State ex rel. Lindsay v. Dwyer* (1996), 108 Ohio App.3d 462, 670 N.E.2d 1375, this court held that Ohio Adm.Code 3307–1–03(A), which required the State Teachers Retirement System of Ohio ("STRS") to keep confidential the names of beneficiaries, was properly promulgated under R.C 3307.21(B), in which the legislature prohibited disclosure of STRS members' personal history records.

Similarly, Ohio Adm.Code 5101:1–1–03 is a general rule promulgated and adopted by the Department of Human Services that governs the release of information and records concerning applicants and recipients of public assistance.

Various federal and state statutes prohibit the release of information concerning public assistance programs, and certain state statutes expressly authorize the Department of Human Services to promulgate rules governing the disclosure of names of public assistance recipients or information from public assistance records. As the Ohio Attorney General noted:

"R.C. 5107.02(C), R.C. 5113.08, and R.C. 5115.03(C) expressly authorize the Department of Human Services to promulgate rules governing the custody and use of the records of ADC, GA, and DA recipients. Such authority reasonably includes the power to promulgate rule 5101:1–1–03, which governs the disclosure of information in such records to other parties. The scope of this authority, however, is also limited by the same statutes. R.C. 5107.02(C), R.C. 5113.08, R.C. 5113.03(C), and R.C. 329.091 limit the disclosure of ADC, GA, and DA records and information obtained therefrom to purposes directly connected with the administration of the particular program." 1994 Ohio Atty.Gen.Ops. No. 94–084, at 2–416.

Thus, the administrative rule governing confidentiality of public assistance programs was properly promulgated under a specific statute governing limitations on use of public assistance records.

In the same vein, R.C. 5503.10 establishes "a program for administering and operating a law enforcement automated data system, to be known as LEADS, providing computerized data and communications to the various criminal justice agencies of the state." The statute designates the Superintendent of the State Highway Patrol as the administrator of the program and expressly authorizes the superintendent to establish rules granting and restricting access to information maintained in LEADS. Ohio Adm.Code 4501:2–10–06(B) restricts all information contained in or processed through LEADS to the use of law enforcement agencies. Based on the express statutory language giving the superintendent the power to restrict access to the information, the Ohio Attorney General opined that information in the LEADS data base, computer tape logs, and hard copies of data were not public records subject to disclosure pursuant to R.C. 149.43(B). 1994 Ohio Atty.Gen.Ops. No. 94–046. See, also, *State ex rel. Master v. Cleveland* (1996), 76 Ohio St.3d 340, 667 N.E.2d 974 (LEADS printouts exempt from disclosure under R.C. 149.43[A][1] and Ohio Adm.Code 4501:2–10–06); *State ex rel. Renfro v. Cuyahoga Cty. Dept. of Human Serv.* (1990), 54 Ohio St.3d 25, 560 N.E.2d 230 (R.C. 2151.421[H][1] clearly removes child abuse investigation reports from the disclosure requirements of R.C. 149.43[B], and Ohio Adm.Code 5101:2–34–38 clarifies the term "unauthorized dissemination" as used in the statute). In this action, the validity of Ohio Adm.Code 4123–6–032(H) must be determined by reference to the statutes governing BWC and the Health Partnership Program. Other than its general rule-making authority under R.C. Chapter 119, BWC has

not directed us to any statutory authority that permits it to prohibit disclosure of information concerning the Health Partnership Program. BWC claims that because its administrative rule was promulgated, pursuant to R.C. 119.03, it has the authority to prohibit the disclosure of records. We disagree. To accept BWC's argument would mean that any state agency with rule-making power under R.C. Chapter 119 could exempt its records from the public records statute. Such an interpretation of R.C. 149.43(A)(1) would eviscerate the public records statute. As demonstrated by the examples discussed above, when the General Assembly wishes to except information from disclosure under R.C. 149.43, it knows how to provide statutory authority to the agencies to do so. It has not done so in the case of the Health Partnership Program, and absent any express statutory authorization from the legislature, BWC's rule is an unauthorized attempt to create an exception to the Public Records Act.

Based on the foregoing, we grant relator a writ of mandamus compelling respondents to provide access to requested records. We deny relator's request for attorney fees as we find that, until the rule was deemed invalid, BWC was required to follow its own administrative rule.

*Writ granted;*
*attorney fees denied.*

PEGGY BRYANT and JOHN C. YOUNG, JJ., concur.