**[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 166.]**

THE STATE EX REL. LUCAS COUNTY BOARD OF COMMISSIONERS *v.* OHIO ENVIRONMENTAL PROTECTION AGENCY ET AL.

[Cite as *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 2000-Ohio-282.]

*Public records—Mandamus to compel Ohio Environmental Protection Agency to provide relator access to commercial hazardous-waste landfill company's complete, unredacted internal, informal record that provides a comprehensive list of the company's current solid and hazardous-waste customers and their specific relation to the company's treatment of waste—Trade secrets—Writ and request for attorney fees denied.*

(No. 98-2549—Submitted January 11, 2000—Decided March 8, 2000.)

IN MANDAMUS.

_____

{¶ 1} Respondent Envirosafe Services of Ohio, Inc. ("Envirosafe") owns and operates a licensed, commercial hazardous-waste landfill in the city of Oregon, Lucas County, Ohio. At this site, Envirosafe treats, stores, and disposes of solid and hazardous waste that is transported to it from Envirosafe's customers, who generate this waste. A substantial portion of the waste that is handled by Envirosafe is electric arc furnace ("EAF") dust, which is a by-product of steel production. The management of EAF dust is highly competitive, and numerous treatment and recycling options exist for steel mills that generate EAF dust.

{¶ 2} In order to properly dispose of the EAF dust, Envirosafe must test the treated waste to verify that it meets the land disposal restrictions contained in Part 268, Title 40, C.F.R. and Ohio Adm.Code 3745-59-40. EAF dust is required to meet Toxicity Characteristic Leaching Procedure, *i.e.* TCLP, standards. Under the testing procedure implemented by Envirosafe to ensure compliance with these

environmental land disposal restrictions, Envirosafe "grabs" a sample of hazardous waste generated by its customers and "holds" the sample until it tests whether the treated waste meets the applicable land disposal restrictions, including the TCLP standards. As part of the waste treatment and testing process, Envirosafe created a "1997 Grab and Hold Tracker," which compiled information concerning its treatment of waste from various waste generators from June 1997 to July 1998. The tracker was an internal, informal company record used by Envirosafe's laboratory personnel for several purposes, including tracking their treatment and results for different waste streams. The tracker was not generated to meet any standard of accuracy or legal requirement and could not be used to determine compliance with the land disposal restrictions. In other words, a test result listed as a failure in the tracker did not necessarily mean a failure to meet the land disposal restrictions; it could have simply referred to an elective failure relating to Envirosafe's research and development work.

{¶ 3} The 1997 tracker contains the following thirteen informational fields: (1) Date; (2) Generator Name (identity of generator of waste); (3) H.R. (whether the waste treated and tested arrived at the Envirosafe landfill by highway or rail); (4) Load # (Envirosafe number identifying a shipment or portion brought to the landfill); (5) WSID (Waste Stream Identification Number assigned to certain waste streams from certain generators); (6) Waste Code (primary United States Environmental Protection Agency Hazardous Waste number); (7) Grab and Hold Type (event causing test to be performed); (8) Treat # Type (sequence of treatment events for entry); (9) P/F (pass or fail evaluation of test results); (10) Mix Design Code (code referring to amounts of stabilizing ingredients that must be added to safely treat different hazardous waste streams); (11) Off Spec (whether the hazardous waste stream was physically different from other waste streams coming from the same generator); (12) Mix Time (length of time the hazardous waste is

mixed with the treatment ingredients); and (13) Comments (Envirosafe laboratory operator remarks).

{¶ 4} Sometime before July 1998, an on-site inspector employed by respondent Ohio Environmental Protection Agency ("Ohio EPA") became aware of the existence of the 1997 tracker and requested a printed copy of it. After conferring with the Ohio EPA, Envirosafe coded the mix design informational field and then provided a copy of the tracker to the Ohio EPA in July 1998. At the same time it submitted the tracker to the Ohio EPA, Envirosafe requested that eleven of the thirteen informational fields, *i.e.*, all of the data fields except for the date and WSID, remain confidential, in accordance with Ohio Adm.Code 3745-50-30(B).[1]

{¶ 5} In October 1998, Lucas County officials requested that the Ohio EPA provide them with a copy of the tracker, which they claimed to be a public record. Within the same week, the Ohio EPA advised Lucas County that before the agency could make the tracker available for inspection, it had to resolve Envirosafe's claim that most of the tracker constituted confidential trade secrets. On the same date, the Ohio EPA requested that Envirosafe submit additional information in order to substantiate its trade secrets claim. Shortly thereafter, Envirosafe withdrew its claim of trade secret protection to six more informational fields in the tracker, but continued to claim confidentiality for the generator name, H.R., mix design code, mix time, and related comments fields.

{¶ 6} On November 23, 1998, the Director of the Ohio EPA upheld Envirosafe's trade secrets claim for the generator name, mix time, and that portion of the comments relating to these data fields. In so holding, the director reasoned that "[l]istings of generator identifications submitted to the Ohio EPA by hazardous waste treatment, storage or disposal facilities historically have been considered by

---

1. Ohio Adm.Code 3745-50-30(B) provides that "[a] request for confidentiality shall be submitted to the Ohio EPA simultaneously with submission of the specific record, report or other information, and such request shall be accompanied by sufficient supporting documentation."

this Agency to be confidential as customer lists" and that "[t]he Mix Time entries that are provided will be considered trade secrets of E[nvirosafe] as knowledge of mix times associated with various waste loads is information regarding E[nvirosafe]'s treatment processes that may be of value to competitors." However, the director denied trade secret protection for the H.R. and mix design code data fields. In his decision, the director notified Lucas County that his action was final and that the decision could be appealed within thirty days to the Environmental Review Appeals Commission under R.C. 3745.04. The director specified that the tracker, except for the data fields that he had determined to be confidential trade secrets, would be available for public inspection on December 9, 1998.

{¶ 7} Instead of appealing the director's decision to the Environmental Review Appeals Commission, on December 3, 1998, relator Lucas County Board of Commissioners, filed a complaint in this court for a writ of mandamus to compel the Ohio EPA to provide the board with access to the complete, unredacted tracker. On December 9, the Ohio EPA provided the board a copy of the tracker that had been redacted in accordance with the director's November 23 decision. We granted Envirosafe's motion to intervene as an additional respondent and, after mediation failed to resolve the case, we granted an alternative writ, issued a schedule for the presentation of evidence and briefs, and ordered the Ohio EPA to submit an unredacted copy of the tracker under seal. We also dismissed the board's mandamus claims insofar as they related to portions of the tracker it had then received.

{¶ 8} In April 1999, while this case was pending, Envirosafe Lab Manager and Monitoring Supervisor James C. Sook testified in an unrelated proceeding before the Environmental Review Appeals Commission that the mix time category in the tracker referred to Envirosafe lab personnel's taking a sample "after so many minutes of mixing to see how well the performance was" and that Envirosafe had performed a research and development study "to show whether or not, by mixing

4

for 20 minutes, rather than 30 minutes, which at the time, a lot of [its] mixes were at 30 minutes, to show [it] that 20 minutes was more than adequate mixing." Sook never testified about specific mix times used for specific waste streams from specific waste generators, as recorded in the tracker.

{¶ 9} This cause is now before the court for a consideration of the Ohio EPA's request for oral argument and the merits.

_____

*Julia R. Bates*, Lucas County Prosecuting Attorney, *Steven J. Papadimos*, Civil Division Chief, and *Lance M. Keifer*, Assistant Prosecuting Attorney, for relator.

*Betty D. Montgomery*, Attorney General, *Bryan F. Zima* and *J. Gregory Smith*, Assistant Attorneys General, for respondent.

*Eastman & Smith, Ltd.*, *Joseph A. Gregg* and *Albin Bauer*, for intervening respondent.

_____

***Per Curiam.***

Oral Argument

{¶ 10} The Ohio EPA requests oral argument because this case "raises important issues of the jurisdiction and procedure in the review of trade secret determinations of the Director." Admittedly, this case raises the novel and important issue of whether the Ohio EPA Director's trade secrets determination under Ohio Adm.Code 3745-49-03 and 3745-50-30 insulates those records found by the director to constitute trade secrets from an R.C. 149.43 public records action and restricts any challenge to the director's trade secrets determination to an administrative appeal to the Environmental Review Appeals Commission.

{¶ 11} Nevertheless, oral argument is not warranted here because the parties' briefs are sufficient to resolve these issues and oral argument would merely prolong a decision in a case that has languished due to the parties' failed attempts

at settling this case through mediation. See *State ex rel. Abner v. Elliott* (1999), 85 Ohio St.3d 11, 16, 706 N.E.2d 765, 769.

*R.C. 149.43 and 3734.12(G); Ohio Adm.Code 3745-49-03 and 3745-50-30*

{¶ 12} The board claims that it is entitled to a writ of mandamus to compel the Ohio EPA to provide access to an unredacted copy of Envirosafe's 1997 tracker. R.C. 149.43, Ohio's Public Records Act, mandates access to public records upon request unless the requested records are specifically excepted from disclosure. *State ex rel. Miami Student v. Miami Univ.* (1997), 79 Ohio St.3d 168, 170, 680 N.E.2d 956, 958. R.C. 149.43(A)(1)(q) specifically excludes "[r]ecords the release of which is prohibited by state or federal law."

{¶ 13} The Ohio EPA and Envirosafe assert that R.C. 3734.12(G), Ohio Adm.Code 3745-49-03, and Ohio Adm.Code 3745-50-30 constitute state law that prohibits the disclosure of trade secrets when the Ohio EPA Director is satisfied that the requested records are trade secrets, and any party challenging the director's decision must raise the challenge in an appeal to the Environmental Review Appeals Commission.

{¶ 14} R.C. 3734.12(G) provides that the Ohio EPA Director shall adopt rules "*[e]stablishing procedures ensuring that all information entitled to protection as trade secrets disclosed to the director or the director's authorized representative is not disclosed without the consent of the owner*, except that such information may be disclosed, upon request, to authorized representatives of the United States environmental protection agency, or as required by law." (Emphasis added.)

{¶ 15} The Ohio EPA Director consequently adopted several administrative rules regarding trade secrets, including the following comparably worded provisions:

"[Ohio Adm.Code] 3745-49-03 Public Availability Of Information

"(A) *Any record*, report, or other information obtained by the Ohio Environmental Protection Agency *shall be made available to the public, except that*

*upon a showing satisfactory to the Director* by any person *that such record*, report, or other information, or particular part thereof (other than discharge or emission data), *if made public, would divulge methods or processes entitled to protection as trade secrets of such person, the Ohio Environmental Protection Agency shall consider such record, report or information, or particular part thereof confidential*." (Emphasis added.)

"Ohio Adm.Code 3745-50-30 Trade Secrets; Request For Confidentiality

"(A) *Any record*, report or other information obtained under the hazardous waste rules or Chapter 3734. of the Revised Code *shall not be available to the public upon a showing satisfactory to the Ohio EPA that all or part of such record*, report or other information (other than discharge or emission data) *would divulge methods or processes entitled to protection as trade secrets* of such person, in which instance, *the Ohio EPA shall consider such record*, report or other information or part thereof *confidential* and administer such record, report or other information pursuant to this rule." (Emphasis added.)

{¶ 16} Ohio Adm.Code 3745-49-03(A) and 3745-50-30(A) require confidentiality of records submitted to the Ohio EPA once the Ohio EPA or its director determines that the records are trade secrets. The Ohio EPA Director concluded in November 1998 that the portions of the 1997 tracker that have not been made available to the board and are the subject of this mandamus action are trade secrets, which need not be disclosed to the board.

{¶ 17} But, for the following reasons, neither R.C. 3734.12(G) nor these administrative rules prevent the board from challenging the Ohio EPA Director's trade secrets determination in this mandamus action.

{¶ 18} First, in and of itself, R.C. 3734.12(G) does not preclude disclosure of the requested record based simply on the director's decision. R.C. 3734.12(G) requires only that the director promulgate procedural rules regarding the confidentiality of trade secrets.

**{¶ 19}** Second, the Ohio EPA and its director lack authority to bestow confidential trade secret status on records that do not constitute trade secrets. An administrative agency has no authority beyond the authority conferred by statute and it may exercise only those powers that are expressly granted by the General Assembly. See *State ex rel. Gallon & Takacs Co., L.P.A. v. Conrad* (1997), 123 Ohio App.3d 554, 559, 704 N.E.2d 638, 642. R.C. 3734.12(G) authorizes the Ohio EPA Director to adopt rules to ensure that only "all information *entitled to protection as trade secrets*" be accorded confidential status; the statute does not empower the director to keep confidential those records that *are not* entitled to trade secret protection nor does it prohibit a challenge to the director's trade secret determination in an R.C. 149.43 mandamus action.

**{¶ 20}** Third, Ohio Adm.Code 3745-50-30(A) must be read *in pari materia* with subsection (D) of that same rule, which provides that "*[a]ny record*, report or other information *determined to be confidential may be disclosed, without such person's consent * * * (2) [i]n any judicial proceeding*." (Emphasis added.) A mandamus proceeding under R.C. 149.43 constitutes a "judicial proceeding" at which Ohio EPA records may be held subject to disclosure as public records.

**{¶ 21}** Finally, the board or, for that matter, any person challenging a trade secrets determination of the Ohio EPA is not relegated to an administrative appeal before the Environmental Review Appeals Commission as the sole remedy. Mandamus is the proper remedy to compel compliance with the Public Records Act, and persons requesting records under R.C. 149.43(C) need not establish the lack of an alternative, adequate legal remedy in order to be entitled to the writ. *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.* (1997), 78 Ohio St.3d 518, 520, 678 N.E.2d 1388, 1389; *State ex rel. Dist. 1199, Health Care & Soc. Serv. Union, SEIU, AFL-CIO v. Lawrence Cty. Gen. Hosp.* (1998), 83 Ohio St.3d 351, 354, 699 N.E.2d 1281, 1283. This conclusion is consistent with the provision in R.C. 149.43 of a prompt opportunity to seek judicial review of decisions by public offices to

8

deny access to requested public records. Cf. *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52, 689 N.E.2d 25, 27 ("*When* records are available for public inspection and copying is often as important as *what* records are available."). (Emphasis *sic*.) Limiting the ability of aggrieved persons to contest the director's decision by requiring them to initially file an administrative appeal does not further the policies underlying R.C. 149.43.

{¶ 22} Based on the foregoing, the board may properly challenge the merits of the Ohio EPA Director's trade secrets decision in this mandamus action.

*Trade Secrets: Generator Names, Mix Times, and Related Comments*

{¶ 23} The board contends that the director erred in determining that the generator name, mix time, and related comments data fields in the tracker are trade secrets. The Ohio Uniform Trade Secrets Act, R.C. 1333.61 through 1333.69, is a state law exempting trade secrets from disclosure under R.C. 149.43. *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 540, 721 N.E.2d 1044, 1049; see, also, R.C. 3734.12(G).

{¶ 24} Trade secrets in the context of Ohio EPA records are "*any formula, plan, pattern, process, tool, mechanism, compound, procedure, production date, or compilation of information that is not patented, that is known only to certain individuals within a commercial concern who are using it to fabricate, produce, or compound an article, trade, or service having commercial value, and that gives its user an opportunity to obtain a business advantage over competitors who do not know or use it.*" (Emphasis added.) R.C. 3734.12(G); Ohio Adm.Code 3745-49-031(D); cf. R.C. 1333.61(D).

{¶ 25} Applying the foregoing definition here, the redacted portions of the tracker, *i.e.*, generator names, mix times, and related comments, constitute a compilation of information and, with regard to mix times, a formula, that are not patented. The applicable patents do not identify the mix times that are most effective and are used for specific customers of Envirosafe.

**{¶ 26}** In addition, Envirosafe took active steps to maintain the secrecy of redacted portions of the tracker. A business or possessor of a potential trade secret must take active steps to maintain its secrecy in order to enjoy presumptive trade secret status. See *Water Mgt., Inc. v. Stayanchi* (1984), 15 Ohio St.3d 83, 85-86, 15 OBR 186, 187-188, 472 N.E.2d 715, 718. Envirosafe routinely sought protection for the tracker and other confidential information when it submitted documents to public agencies, including the Ohio EPA and the United States EPA. For example, Envirosafe's annual report, which contains information about Envirosafe's current customers, is filed with a claim for protection of confidential business information. Similarly, Envirosafe submitted a copy of its tracker to the Ohio EPA with an accompanying request that certain data fields, including those at issue in this action, be considered confidential as trade secrets. And Envirosafe's employees, contractors, and subcontractors are required to sign confidentiality agreements and maintain the confidentiality of all records so designated by Envirosafe.

**{¶ 27}** The board nevertheless contends that the redacted portions of the tracker are not confidential trade secrets because they are no longer "known only to certain individuals" within Envirosafe who use the tracker. R.C. 3734.12(G); Ohio Adm.Code 3745-49-031(D). More specifically, the board asserts that the generator-names data field is available through other public sources and that Envirosafe publicly disclosed the mix times data field in the April 1999 Environmental Review Appeals Commission proceeding.

**{¶ 28}** The director analogized the generator names on the tracker to a list of Envirosafe's customers. A customer list is an intangible asset that is presumptively a trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those selected by the owner. *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.* (1996), 109 Ohio App.3d 786, 791, 673 N.E.2d 182, 185;

10

see, also, *Consumer Direct, Inc. v. Limbach* (1991), 62 Ohio St.3d 180, 183, 580 N.E.2d 1073, 1075; *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 264, 602 N.E.2d 1159, 1163.

{¶ 29} But " 'where the identity of the customers is readily ascertainable through ordinary business channels or through classified business or trade directories, the courts refuse to accord to the list the protection of a trade secret.' " *Callahan v. Rhode Island Oil Co.* (1968), 103 R.I. 656, 661, 240 A.2d 411, 413-414, quoting *Town & Country House & Homes Serv., Inc. v. Evans* (1963), 150 Conn. 314, 320, 189 A.2d 390, 394. In other words, a document is entitled to trade secret status "only if the information is not generally known or readily ascertainable to the public." *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.* (1997), 80 Ohio St.3d 513, 529, 687 N.E.2d 661, 675.

{¶ 30} The board claims that Envirosafe's generator/customer names are not trade secrets because they are readily ascertainable from industry directories, industry publications, Internet websites, United States EPA reports, and hazardous waste manifests. In support of this claim, the board cites *In re Urgent Medical Care, Inc.* (Bankr.Ct. S.D.Ohio 1993), 153 B.R. 784, at 789, in which the court held that a health care provider's client list was not a trade secret because the information was readily available from public sources and there was no additional information that entitled the list to confidential status:

"The employer client list does not contain information which rises to the level of confidentiality such that it qualifies as a trade secret. It is merely a list of clients who use [the employer] to provide occupational health care services for their employees. *Absent additional information about the employer's requirements and preferences, which information appears only on the 'green sheets,' the list alone does not constitute a trade secret*. The identity of these employer clients is simply a list of much of the universe of business employers likely to need occupational

health care services in Central Ohio. Such information is readily available from other sources and is not a 'secret.' " (Emphasis added.)

{¶ 31} Unlike the list in *Urgent Medical Care*, however, the generator-names data field is not a simple list of customer names. Instead, the generator-names field in the context of the tracker contains additional information, *i.e.*, its disclosure would permit persons to determine the relative amount of waste each generator sends to Envirosafe, which generator's waste fails Envirosafe's tests more than other generators, whether one generator has more waste streams that are physically different and require different treatment from other generators, and, if disclosed with mix times, whether one generator's waste has to be mixed longer in order to be properly treated.

{¶ 32} It does not matter that some of the tracker has been publicly disclosed. "Where documents already in the public domain are combined to form a larger document, a trade secret may exist if the unified result would afford a party a competitive advantage." *Plain Dealer*, 80 Ohio St.3d at 528, 687 N.E.2d at 674-675; see, also, *Save Our Selves, Inc. v. Louisiana Environmental Control Comm.* (La.App.1983), 430 So.2d 1114, 1120 (requested information protected as trade secrets because information together with information publicly disclosed in patent would enable business competitors to duplicate secrets).

{¶ 33} The fragments of information that the board claims are available through other public sources is not as complete nor as informative as the tracker, which provides a comprehensive list of Envirosafe's current customers and their specific relation to Envirosafe's treatment of their waste. No other company in the EAF dust-treatment business knows all of Envirosafe's customers and their treatment needs. Therefore, the generator-names data field of the tracker is not readily ascertainable from the public sources specified by the board.

{¶ 34} The board next contends that the mix times data field of the tracker is not "known only to certain individuals" within Envirosafe who use the tracker

because Envirosafe publicly disclosed this field in the April 1999 Environmental Review Appeals Commission proceeding. "[O]nce material is publicly disclosed, it loses any status it ever had as a trade secret." *State ex rel. Rea v. Ohio Dept. of Edn.* (1998), 81 Ohio St.3d 527, 532, 692 N.E.2d 596, 601; *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 377, 662 N.E.2d 334, 337.

{¶ 35} The board's contention is meritless. The testimony at the administrative hearing did not disclose specific mix times for specific waste streams. And contrary to the board's speculation and interpretation of the administrative hearing testimony, the tracker indicates that a twenty-minute mix time was not always an appropriate time for certain waste streams.

{¶ 36} Finally, the redacted portions of the tracker give Envirosafe an "opportunity to obtain a business advantage over competitors who do not know or use it." R.C. 3734.12(G); Ohio Adm.Code 3745-49-031(D). Disclosure of the redacted portions of the tracker would permit an Envirosafe competitor to avoid some of Envirosafe's expenditures and effort to create and expand its business by using knowledge of Envirosafe's customers, their wastes, and associated mix times to treat the different wastes. Envirosafe and its employees would consequently be at risk of losing their business and jobs. A competitor could determine that a longer treatment time for certain waste from a specific generator would be more costly than treating the waste from another generator that required a shorter mix time and could thereby target those generators that would be more profitable customers from whom to solicit business.

{¶ 37} Based on the foregoing, the board is not entitled to a writ of mandamus to compel the disclosure of the generator name, mix time, and related comments data fields of the tracker. These portions of the tracker are entitled to exemption from disclosure as trade secrets. The board is also not entitled to attorney fees because it is not entitled to the writ, and, in fact, there is no evidence that the board paid any attorney fees to its counsel. See *State ex rel. Gannett*

*Satellite Info. Network, Inc. v. Petro* (1998), 81 Ohio St.3d 1234, 1235, 690 N.E.2d 11, 12 ("[T]he party against whom an award of fees [in an R.C. 149.43 public records action] is assessed should be responsible for those fees incurred only as a direct result of that party's failure to produce the public record."); *State ex rel. Russell v. Thomas* (1999), 85 Ohio St.3d 1488, 709 N.E.2d 1215. Accordingly, we deny the writ and the request for attorney fees.

*Writ denied.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., not participating.

————————————