OPINION
Appellee-appellant, Ohio Board of Building Standards ("board"), appeals from a judgment of the Franklin County Court of Common Pleas reversing the board's decertification of the building department of appellant-appellee, City of Oberlin ("city") as a local enforcement agency of the Ohio Basic Building Code ("OBBC").
In 1997, pursuant to R.C. 3781.10(E) and Ohio Adm. Code 4101:2-71-84, the building department of the city was certified by the board "to exercise enforcement authority and to accept and approve plans and specifications, and to make inspections in accordance with the provisions of the `Ohio Basic Building Code' * * *." Ohio Adm. Code 4101:2-71-84.
After receiving complaints from rooming house operators about the building department of the city, and based on its own investigation, the board held an adjudicatory hearing on June 17, 1999, to consider allegations of misapplication and retroactive enforcement of the OBBC in violation of R.C. 3781.12. Following the June 17, 1999 adjudicatory hearing, the board held a public hearing on November 5, 1999, to consider rescission of Ohio Adm. Code 4101:2-71-84, the rule that certified the building department of the city as a local enforcement agency of the OBBC.
Pursuant to its authority in R.C. 3781.10, on December 17, 1999, the board repealed Ohio Adm. Code 4101:2-71-84 effective February 1, 2000. In its December 17, 1999 order, the board determined that "* * * the City of Oberlin failed to comply with the rules and regulations of the Ohio Basic Building Code by improperly enforcing the serious hazards provisions of the Ohio Basic Building Code and by retroactive enforcement of building code provisions in existing structures in violation of the Revised Code and the Ohio Basic Building Code." The repeal of Ohio Adm. Code 4101:2-71-84
in effect revoked the city building department's certification.
Following revocation, the city timely appealed the board's order to the Franklin County Court of Common Pleas. The common pleas court reversed the board's order. The board timely appeals, assigning two errors:
ASSIGNMENT OF ERROR #1
 THE COMMON PLEAS COURT ERRED WHEN IT HELD THAT ALL THE DWELLINGS IN QUESTION HAD BEEN CONVERTED TO ROOMING HOUSES AFTER THE OHIO BASIC BUILDING CODE WAS ENACTED.
ASSIGNMENT OF ERROR #2
 THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW WHEN IT HELD THAT OBERLIN COULD RETROACTIVELY ENFORCE THE OBBC AGAINST ROOMING HOUSES THAT HAVE BEEN OCCUPIED FOR MORE THAN TWO YEARS.
R.C. 3781.101 governs appeals from the proceedings of the board to the Franklin County Court of Common Pleas, and provides:
 Notwithstanding the provisions of section 119.11 of the Revised Code, in any proceedings commenced under section[s] 3781.10, 3781.12, 3781.13, and 3781.14 of the Revised Code, the jurisdiction of the court of common pleas of Franklin county shall not be confined to the record as certified to it by the board, but shall receive such additional evidence as it shall permit any party to offer; and the court shall not affirm the order or rule of the board unless the preponderance of the evidence before it supports the reasonableness and lawfulness of such order or rule.
In In re Appeal of City of Springdale (Nov. 28, 1989), Franklin App. No. 89AP-539, unreported, affirmed (1991), City of Springdale v. Ohio Bd. of Bldg. Stds., 59 Ohio St.3d 56, this court noted: "The board is entitled to certify or decertify its enforcement agency * * * if the board is not arbitrary or capricious in the exercise of its decertification power." See, also, In re Hearing of Cincinnati Certified Bldg. Dept. (1983), 10 Ohio App.3d 178, 180; City of Middleburg Hts. v. Ohio Bd. of Bldg. Stds. (July 16, 1991), Franklin App. No. 90AP-1289, unreported, affirmed (1992), 65 Ohio St.3d 510. But, see, Decertification of Eastlake, City of Eastlake v. Ohio Bd. of Bldg. Stds. (1981),66 Ohio St.2d 363, 367, certiorari denied, City of Eastlake v. Ohio Bd. of Bldg. Stds., 454 U.S. 1032 ("Although the final order decertifying Eastlake took the form of a rule, the procedure followed by the board was an adjudicatory hearing conforming to R.C. Chapter 119, and authorized in R.C. 3781.101"); Wahle v. Dept. of Indus. Relations, Bd. of Bldg. Stds. (1983), 14 Ohio App.3d 101 (R.C. 119.12 provides the standard of review for the Franklin County Court of Common Pleas in an appeal of an order of the Board of Building Standards that denied an individual's application as the chief building official for a municipal building department). In accordance with Springdale, we are to determine whether the common pleas court erred in finding the board abused its discretion when it decertified the city as the enforcement agency for the OBBC.
In its first assignment of error, the board contends the common pleas court erred when it determined that all the dwellings in question had been converted to rooming houses after the OBBC was enacted, stating:
 In this case * * * the City has changed its position on the suitability of the fire escapes which it has tacitly approved in reissuing the licenses every year and in the initial approval of the conversion of the homes into rooming houses. The conversions took place after the OBBC was in effect and therefore required State approval. * * * The OBBC has been in effect since 1959. Certificates of occupancy are required to be issued by the State and have been since 1979. R2 uses require state approval. Since no state approval for these conversions was ever sought or obtained, the rooming houses were never properly converted or licensed. (Decision, 7-8.)
Initially, we note three prefatory issues. First, while the board addressed both the city's allegedly retroactive application of the OBBC and the allegedly improper enforcement of the serious hazards portion of the OBBC, the common pleas court only determined whether the city's building department was retroactively enforcing the OBBC. It did not resolve whether the building department improperly enforced the serious hazards provisions of the OBBC, because its finding "that the occupancy was unlawful based on the failure to get State approval for the use of the property as a rooming house and for failure to obtain a state occupancy permit * * * obviates the necessity to reach whether or not the fire escapes constituted serious hazards." (Decision, 8.)
Secondly, in its decision and judgment entry, the common pleas court misstated the effective date of the OBBC, concluding "[t]he OBBC has been in effect since 1959." (Decision, 7.) Chapters 4101:2-1 to 4101:2-69 of the Ohio Administrative Code are collectively known as the "Ohio Basic Building Code" and became effective in 1979. Ohio Adm. Code 4101:2-1-01; the "Ohio Building Code" became effective in 1959.
As a result, we cannot readily determine whether the common pleas court's statement that "[t]he conversions took place after the OBBC was in effect" indicates (1) the conversions took place after 1979 when the OBBC was in effect, or (2) the conversions took place after 1959 when the court indicated that the OBBC became effective. Therefore, our analysis considers both options.
Thirdly, in the decertification hearing, the rooming house operators as complainants had the burden of proving to the board the city's allegedly retroactive application of the OBBC and the city's allegedly improper enforcement of the serious hazards portion of the OBBC. See Turner v. Krob (May 23, 1985), Cuyahoga App. No. 49162, unreported ("It is a fundamental concept in administrative law and procedure that the party asserting the affirmative bears the burden of proof * * *"); Beare v. City of Eaton (July 23, 1984), Preble App. No. CA83-09-018, unreported ("[o]ne of the fundamental concepts of administrative law and procedure is that the party asserting the affirmative of an issue bears the burden of proof"). Indeed, a board member at the hearing acknowledged the burden of proof. ("MR. BRANT: Oh, and one other thing. The burden of proof rests upon the Complainant to show by clear and probative evidence that what is alleged actually occurred.") (Tr. 11.)
At the June 17, 1999 hearing, David Sonner, who operates a rooming house at 49 East College Street, Oberlin, Ohio, testified on re-cross-examination about the conversion of his rooming house property as follows:
 Mr. Smith [board member]: Mr. Sonner, in what year was this converted?
The witness [David Sonner]: I have no idea.
Mr. Smith: Prior to '80?
The witness: Prior to 1940 as nearly as I can discover.
Mr. Smith: Thank you. (Tr. 123-124.)
No evidence was introduced at the hearing to contradict Sonner's testimony.
Sonner's testimony that his property was converted "[p]rior to 1940 as nearly as I can discover" contradicts the common pleas court's determination that the conversions of all the dwellings in question occurred after the OBBC was in effect. Here, whether the effective date of the OBBC be 1959 or 1979, the conversion date of "[p]rior to 1940 as nearly as I can discover" pre-dates either. Nor did the common pleas court determine that Sonner's testimony was not reliable or credible. Consequently, the common pleas court's conclusion with respect to Sonner's testimony is not supported by the record. However, as to the rooming houses of Van Kirkendall and Glen Gall, the record supports a determination that Van Kirkendall converted abandoned dwellings to rooming houses, and Gall resumed rooming house operations in a previously vacant house, subsequent to both 1959 or 1979.
Moreover, the record arguably allows the trial court to conclude from the testimony of Carol Graham and Betty Baxter that their dwellings were converted to rooming houses after the OBBC was enacted. On cross-examination, Graham stated that in 1988 she applied for a city rooming house license for two of her three properties, and in 1994 she applied for a city rooming house license for a third property. Her testimony arguably allows the inference that she converted her dwellings to rooming houses in the years she applied for licenses, both of which were after either 1959 or 1979. Similarly, the board in its brief admits that Baxter received approval to operate her dwelling as a rooming house in 1990, and Baxter's testimony before the Ohio Board of Building Appeals indicates that a third floor remodeling job received city approval around 1990. In any event, even if the noted inferences are not permissible, the record nonetheless fails to demonstrate the city retroactively applied the OBBC to Baxter's and Graham's properties, given the absence of testimony demonstrating that the use of those properties as rooming houses pre-dated the code.
Therefore, to the extent that the common pleas court found that all dwellings in question had been converted to rooming houses after the OBBC was enacted, the common pleas court erred. Nonetheless, no reversible error occurred, as the complainants before the board, other than Sonner, did not prove retroactive application of the OBBC due to their failure to testify to the year their respective properties were converted to rooming houses before either 1959 or 1979. As to Sonner, however, the board's first assignment of error is sustained. Accordingly, the board's first assignment of error is sustained in part and overruled in part.
In its second assignment of error, the board contends the common pleas court erred when it determined the city could enforce the OBBC against rooming houses that have been occupied for more than two years.
Retroactive enforcement of the OBBC is proscribed by R.C. 3781.12, which provides in part:
 No such rule, regulation, amendment or annulment shall apply to any building the plans or drawings, specifications, and data of which have been approved prior to the time such rule, regulation, amendment, or annulment takes effect.
See, also, Ohio Adm. Code 4101:2-1-09(D) ("OBBC applies to all buildings except as follows * * * (D) Buildings constructed in accordance with plans which have been approved prior to the effective date of OBBC").
Under Ohio Adm. Code 4101:2-1-27, certificates of occupancy are required for new buildings, altered buildings and existing buildings. In its decision and judgment entry, the common pleas court relied on Sergakis v. Busch (Dec. 30, 1999), Franklin App. No. 99AP-283, unreported, and determined:
 Certificates of occupancy are required to be issued by the State and have been since 1979. R2 uses require state approval. Since no state approval for these conversions was ever sought or obtained, the rooming houses were never properly converted or licensed. Since the actions of Oberlin in approving them were outside their authority, the City is not now estopped from enforcing the OBBC. (Decision, 7-8.)
As a preliminary matter, to the extent that the common pleas court found no state approval was ever obtained by rooming house operators, the common pleas court erred. At the adjudicatory hearing, Sonner testified on direct examination: "Nearly three years later, out of the 42 rooming houses, perhaps a half dozen of those 42 have R-2 certificates. And I have two of them." (Tr. 109-110.)
However, evidence in the record supports a conclusion that some rooming house operators never obtained state approval. Specifically, the testimony of Van Kirkendall and the cross-examination testimony of Graham indicate they do not have the required certificates of occupancy. Similarly, the testimony of Gall suggests he does not have a certificate of occupancy for his rooming house. Lastly, no evidence addresses whether Baxter has a certificate of occupancy, although Baxter claims that a third floor remodeling job did receive city approval in about 1990. See Exhibit 18-17.
In Sergakis, this court addressed a case in which a city building inspector gave final approval on a permit to modify an existing rooming house in violation of the OBBC. The appellants in Sergakis argued the city was estopped from enforcing the OBBC because the city had ratified and approved the modifications. Disagreeing, this court stated:
 It is well-established that the principle of equitable estoppel may be applied against a municipality under certain circumstances. * * * When a municipality acts within the scope of its authority, the doctrine can be invoked against the municipality. * * * However, it is also well-established that the doctrine of equitable estoppel does not apply where the subject matter involved is ultra vires, illegal, or malum prohibitum. * * * Furthermore, "a municipality will be bound only by the representations authorized to be made by its officers and agents." * * * In other words, estoppel applies against a municipality if the city official or agent who issued the permit or license was authorized to do so, and the issuance of the permit or license was not illegal at the time. (Citations omitted.)
The common pleas court's reliance on this court's decision in Sergakis is appropriate, but not dispositive. Based on Sergakis, to the extent that rooming house operators failed to obtain required state approval, the city is not estopped from enforcing the OBBC against them. In addition, if rooming house operators failed to obtain required state approval, then the retroactive enforcement prohibitions of R.C. 3781.12
and Ohio Adm. Code 4101:2-1-09(D) do not apply because these provisions prohibit retroactive application to buildings that received approval prior to the effective date of the applicable rule or regulation.
Although estoppel does not lie against the city based on Sergakis because the city's approvals of conversions were outside of its scope of authority, the issue is not finally resolved. In its decision and judgment entry, the common pleas court noted:
 Sometime after this dispute began, the OBBS promulgated OAC 4101:2-1-09 * * * which purports to except from the building code structures which have been occupied for two years absent, in relevant part, serious hazards. Without reaching the legality of the promulgation of this rule, the Court finds that the occupancy was unlawful based on the failure to get State approval for the use of the property as a rooming house and for failure to obtain a state occupancy permit as previously discussed. This conclusion also obviates the necessity to reach whether or not the fire escapes constituted serious hazards. (Decision, 8.)
Under Ohio Adm. Code 4101:2-1-09(C)(2), which became effective March 1, 1998, existing buildings are excepted from the OBBC as follows:
The OBBC applies to all buildings except as follows:
* * *
(C) Existing buildings:
* * *
 (2) For which the alleged occupancy can be shown to have existed for more than two years provided there is no order of the building official pending, fraud, or serious safety or sanitation hazard[.]
Here, the board argues the city impermissibly applied the OBBC to the rooming house operators at issue because the rooming houses were occupied for more than two years.
Overall, Ohio Adm. Code 4101:2-1-09(C)(2) is difficult to interpret. It purports to create an exception to the application of the OBBC to existing buildings for which alleged occupancy can be shown to have existed for more than two years, provided, in relevant part, there is no serious safety or sanitation hazard. To that extent, it raises an issue about its being consistent with R.C. 3781.10 and 3781.06. Under R.C. 3781.10(A), the board of building standards is to formulate and adopt rules governing the maintenance of buildings or classes of buildings specified in R.C.3781.06. R.C. 3781.06 expressly excepts some buildings from statutory oversight. See R.C. 3781.06(A), 3781.06(B)(1) and (B)(2). R.C. 3781.06
contains no exemption from the OBBC for buildings for which alleged occupancy can be shown to have existed for more than two years provided there is no serious hazard, as provided in Ohio Adm. Code 4101:2-1-09(C)(2). Accordingly, the rule at first blush suggests the board may have acted ultra vires and may have exceeded its authority under R.C. 3781.06 and 3781.10. If so, Ohio Adm. Code 4101:2-1-09(C)(2) would be invalid and unenforceable. State ex rel. Gallon Takacs Co. v. Conrad (1997),123 Ohio App.3d 554, 559, cause dismissed (1998), 81 Ohio St.3d 1504
("[O]nly valid rules have the force of law, and the validity of any administrative rule must be determined by reference to the statutes governing the agency").
The parties have not had an opportunity to properly brief this issue before the common pleas court. Moreover, the rule, if valid, appears to apply to the rooming houses at issue, unless it was promulgated at a time rendering it inapplicable to the dispute at issue. If the rule is valid and applicable, the common pleas court must then make a finding concerning the existence of serious hazards to determine whether under Ohio Adm. Code 4101:2-1-09(C)(2), the rooming houses are excepted from application of the OBBC. In its analysis under Ohio Adm. Code4101:2-1-09(C)(2), if the common pleas court determines the existence of serious hazards, then the OBBC may be applied to rooming houses even though occupancy can be shown to have existed for more than two years. However, if the common pleas court determines there are no serious hazards, then the OBBC may not be applied to rooming houses for which alleged occupancy can be shown to have existed for more than two years. Further, after determining which, if any, of the rooming houses are subject to the OBBC, the common pleas court will have to determine whether the board abused its discretion in decertifying the city as the enforcement agency.
Finally, because the common pleas court made no determination about the city's allegations of due process violations raised in the common pleas court, we decline to address that issue until the common pleas court has an opportunity to rule on this issue. The board's second assignment of error is sustained to the extent indicated.
Having overruled in part and sustained in part the board's first assignment of error, and having sustained its second assignment of error to the extent indicated, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
BROWN and DESHLER, JJ., concur.