DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas in a case involving a breach of contract action by a former employee of a county board of elections. Because we conclude that the trial court properly granted summary judgment, we affirm.
 {¶ 2} In May 2001, appellant, Lois M. Brock, sued appellee, the Lucas County Board of Elections ("Board") and its director, Antoinette Szuch ("Szuch"), for breach of contract upon an agreement entered into as a result of the Board's termination of Brock's employment in 1995. That agreement included the following terms relevant to this appeal:
 {¶ 3} "If future inquiry is made regarding Employee's employment or the circumstance surrounding the separation from employment with the Board, the Board will limit its response to a neutral recommendation. The term neutral recommendation means that response will be limited to stating the dates of employment, positions held with the board and job duties, and rates of compensation. The letter which Employee agrees is an acceptable neutral recommendation is attached hereto as Exhibit A." The letter referred to states in pertinent part:
 {¶ 4} "This is to certify that Lois M. Brock was employed as an Assistant Clerk at the Lucas County Board of Elections since February 3, 1983. She performed a variety of clerical tasks in the voter registration department and assisted in the recruitment of Republican booth workers.
 {¶ 5} "On September 1, 1995, she retired from this agency."
 {¶ 6} Brock alleged that the agreement was breached because Szuch had allegedly given out negative information about Brock during inquiries made by several investigative firms or individuals.
 {¶ 7} The Board first filed a motion for judgment on the pleadings which was denied by the trial court. Brock moved for partial summary judgment on the issue of liability. The Board filed a memorandum in opposition and also a motion for summary judgment. It argued that the contract was void, that it did not apply to Szuch, and that Brock had failed to provide any evidence that the alleged breach caused damages to her.
 {¶ 8} The trial court granted summary judgment in favor of the Board, ruling that since the Board of Elections was not granted the express power to contract, the 1995 agreement was void. Appellant now appeals from that judgment arguing the following sole assignment of error:
 {¶ 9} "The lower court committed reversible error in holding that the agreement entered into between the appellant and appellee Lucas County Board of Elections in 1995 is void and thus appellant could not sue for breach of contract."
 {¶ 10} As the trial court correctly noted, legislatively created county agencies, officials, and departments may only exercise powers that are clearly granted by statute. See State ex rel Godfray v. McGinty
(1981), 66 Ohio St.2d 113. Nevertheless, county boards and officials also have such duties and powers which are naturally and necessarily implied from the language of the statute. See Britt v. Franklin County Comm'rs,148 Ohio App.3d 395, 2002-Ohio-3679, ¶ 16; State ex rel. Winters v.Kratt (1926), 19 Ohio App. 454, 456. Thus, of necessity, county boards must have implied powers to carry out certain express powers. See Ebertv. Bd. of Mental Retardation (1980), 63 Ohio St.2d 31, 33 (board's power to employ personnel and provide services also implies the power to fix compensation of such employees); State ex rel. Maston v. McGinnis
(1922), 106 Ohio St. 231, 232 (boards may exercise powers not expressly granted by statute but which are impliedly necessary).
 {¶ 11} R.C. 3501.14 provides that, by a majority vote, a board of elections has the power to remove employees from their job positions. In our view, incident to this express power to terminate an employee's employment, there is an implied power to determine the conditions of that termination. Moreover, contrary to the Board's argument and the trial court's determination, boards of election do have certain express powers to contract. R.C. 3501.141 specifically grants a power to contract for the cost of group health insurance for full-time employees; R.C. 3502.301 pertains to a board's contracts for supplies other than ballots. We thus conclude that the Board of Elections did, in fact, have the power to enter into a settlement contract with Brock which included conditions pertaining to her termination. Therefore, the trial court erred in its determination that the contract between the Board and Brock was void.
 {¶ 12} Nonetheless, we must examine whether summary judgment is warranted even though there was a valid contract. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc.
(1998), 82 Ohio St.3d 367, 369-370; see, also, Civ.R. 56(C).
 {¶ 13} Brock needed prima facie evidence that the Board breached the settlement agreement and that the breach resulted in damages to her, i.e., the inability to obtain employment, before she can withstand a motion for summary judgment. See Cooper Pachell v. Haslage (2001),142 Ohio App.3d 704, 707; Doner v. Snapp (1994), 98 Ohio App.3d 597, 600
(prima facie elements for breach of contract include 1) the existence of a contract, 2) performance by the plaintiff, 3) breach by the defendant, and 4) damage or loss to the plaintiff).
 {¶ 14} In deposition testimony, Brock provided a lengthy list of jobs she had applied for after leaving the Board, from 1995 until her lawsuit in 2001. For some positions, she provided a copy of her resume to the employer; for others, she simply inquired by telephone. Some employers called her in for interviews and some never even responded to her application. Brock related that one interviewer said he was "curious to see a woman that was hated so very much." She could not say, however, what the man was referring to, because she immediately left the interview.
 {¶ 15} Brock acknowledged that she had no actual information or knowledge that any of the employers called or received any negative information from the Board of Elections. She noted that, during interviews, she divulged the reason for the termination of her job at the Board and that it was not on friendly terms. Brock also indicated that she turned down some jobs, such as a telemarketing position and an offer to apply for a 9-1-1 operator with the city of Toledo. She was hired by three employers, Great Lakes Marketing, Styl-Rite Lamps, and Myers Hearth Casual, her current employer where she worked "off and on" over the previous six years.
 {¶ 16} In support of her claim that the Board had breached the agreement, Brock submitted three reports from investigators who had called the Board seeking information about her employment there. The first company, Meridian Intelligence Group, Inc., concluded that although "there were no negative reports of any significance to this matter, there were some ambiguous comments made about Ms. Brock in our contact with Lucas County Board of Elections." The second report was an affidavit from an individual employed by a friend of Brock's attorney. The employee averred that when he called to inquire about Brock's employment with the Board, Szuch informed him that Brock had retired from her position as Assistant Clerk and would not be considered for rehire. Documented Reference Check conducted the third investigation and submitted the transcript of an alleged conversation between its investigator and Szuch. Upon inquiry, responding that Brock did not have problems with attendance or tardiness, that she was productive and that she communicated well, Szuch answered most inquiries with "yes" or "no." When specifically asked about Brock's interpersonal skills with management, Szuch stated, "She had a few problems." Szuch also replied to a specific inquiry by the investigator that she would not consider rehiring Brock. When asked for the reason, Szuch stated that she would not elaborate. Upon further questioning, Szuch stated that she couldn't "get into that, but she is not eligible" and then drew the discussion to a close.
 {¶ 17} A complete review of the evidence presented shows that, although Szuch may have stated that Brock would not be considered for rehire, the information by itself is not negative. Brock may have been ineligible for rehire since she had retired and had begun collecting her retirement benefits. In addition, when Szuch stated that Brock "had some problems," it was a very general response to a specific question. The nature of the settlement agreement created a no-win situation, since evading or refusing to answer inquiries was also construed as a negative comment, as noted by the Meridian investigation. In our view, Szuch remained sufficiently neutral in order to provide general information without being overly evasive or untruthful. Therefore, we conclude that Brock did not establish that Szuch or the Board breached the settlement agreement.
 {¶ 18} Assuming arguendo, that such comments constituted a breach, Brock presented no evidence to show that any prospective employer called the Board or received negative information. Without some evidence that an employer actually contacted the Board and received negative information, the reasons for Brock's failure to obtain employment remain purely speculative. She admitted providing information herself during interviews that could have had a negative impact on employers. Since Brock failed to establish any link between her failure to obtain various jobs and any actions by the Board or its agents, she did not establish that any alleged breach proximately caused her failure to obtain employment. Although the trial court reached the right result for the wrong reason, no material facts remain in dispute and the Board is entitled to judgment as a matter of law. Therefore, we conclude that summary judgment was properly granted in favor of the Board.
 {¶ 19} Accordingly, Brock's sole assignment of error is not well-taken.
 {¶ 20} The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
Judgment Affirmed.
Richard W. Knepper, J., Mark L. Pietrykowski, J. and Judith Ann Lanzinger, J., concur.