[Cite as *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Commerce, Div. of Fire*, 2019-Ohio-4009.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

The State ex rel. The Cincinnati Enquirer,   :
A Division of Gannett GP Media, Inc.,

  :

      Relator,

  :

v.                                   No. 17AP-63

  :

Ohio Department of Commerce,             (REGULAR CALENDAR)
Division of State Fire Marshal,

  :

      Respondent.         :

---

D E C I S I O N

Rendered on September 30, 2019

---

**On brief:** *Graydon Head & Ritchey LLP, John C. Greiner,* and *Darren W. Ford*, for relator. **Argued:** *John C. Greiner.*

**On brief:** [*Dave Yost*], Attorney General, *Hilary Damaser, Keith O'Korn*, and *Sarah Pierce*, for respondent. **Argued:** *Keith O'Korn.*

---

IN MANDUMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, the Cincinnati Enquirer, a division of Gannett GP Media, Inc., ("Cincinnati Enquirer") filed this original action requesting a writ of mandamus ordering respondent, Ohio Department of Commerce, Division of State Fire Marshal ("fire marshal"), to comply with the Cincinnati Enquirer's public records request under R.C. 149.43 and seeks reasonable attorney fees and court costs under R.C. 149.43(C). The record at issue is the "Fire and Explosion Investigation Bureau Incident Report" ("incident report") prepared by the fire marshal in connection with a fire in Hamilton, Ohio on

December 28, 2015, that resulted in the death of a firefighter and criminal charges of arson and murder against two people allegedly responsible for the fire.

{¶ 2}   The fire marshal argues that the incident report is protected by either the Confidential Law Enforcement Investigatory Records ("CLEIR") exception to the Public Records Act, or by the trial preparation records exception.  The Cincinnati Enquirer argues that the entire incident report is not protected by an exception and the fire marshal was required to release, at a minimum, a redacted incident report.

{¶ 3}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate concluded that this court should issue a writ of mandamus ordering the fire marshal to release the incident report in response to the Cincinnati Enquirer's public records request with redactions.   The magistrate did not award attorney fees determining that, overall, the fire marshal had a good-faith basis for withholding the requested document.

{¶ 4}   Both parties timely filed objections to the findings of fact and conclusions of law set forth in the magistrate's decision.  Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of the objections, we adopt in part the magistrate's decision.

## I.   FACTS AND PROCEDURAL BACKGROUND

{¶ 5}   On December 28, 2015, a firefighter died while fighting a fire that occurred at 1310 Pater Avenue, Hamilton, Ohio.  The State Fire Marshal investigated the origin and cause of the fire.  The incident report was finalized in November 2016.  (Dunn dep. at 29.) On January 6, 2017, two men were indicted on charges of aggravated arson and murder and after a trial, the two men were found guilty and sentenced on November 28, 2017.  *See State v. Parker*, Butler C.P. No. CR 2016 12 1807; *State v. Tucker*, Butler C.P. No. CR 2017 01 0028.  The cases were appealed and the Twelfth District Court of Appeals affirmed the judgments.  *See State v. Parker*, 12th Dist. No. CA2017-12-176, 2019-Ohio-830; *State v. Tucker*, 12th Dist. No. CA2017-12-172, 2019-Ohio-911.

{¶ 6}   Prior to the indictments of Parker and Tucker, on January 4, 2016, the Cincinnati Enquirer made its first public records request of the fire marshal for the incident report.  The fire marshal refused the request.  The Cincinnati Enquirer initiated a mandamus action in the Supreme Court of Ohio seeking a writ ordering disclosure of the

incident report. The fire marshal filed a motion to dismiss for failure to state a claim because the requested document did not exist at that time and the fire marshal raised the CLEIR exception. The Supreme Court granted the fire marshal's motion to dismiss.

{¶ 7} On December 16, 2016, the Cincinnati Enquirer made a second public records request to the fire marshal for its incident report. The fire marshal denied the request, asserting that the records were confidential law enforcement investigatory records. On January 26, 2017, the Cincinnati Enquirer filed this mandamus action seeking production of the incident report and an award of reasonable attorney fees and court costs pursuant to R.C. 149.43(C).

## II. MOOTNESS

{¶ 8} Since the filing of this mandamus action, the fire marshal has provided the incident report to the Cincinnati Enquirer. After the two men, Parker and Tucker, were convicted of arson and murder, the fire marshal provided an unredacted copy of the records to the Cincinnati Enquirer. (Jan. 18, 2018 Fire Marshal Objs. at 8, fn. 1.) Generally, " 'providing the requested records to the relator in a public-records mandamus case renders the mandamus claim moot.' " *State ex rel. Cincinnati Enquirer v. Heath*, 121 Ohio St.3d 165, 2009-Ohio-590, ¶ 10, quoting *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, ¶ 43. However, "a claim 'is not moot if it is capable of repetition, yet evading review.' " *Id.* at ¶ 11, quoting *State ex rel. Dispatch Printing Co. v. Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, ¶ 10. This exception to the mootness doctrine:

> [A]pplies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.

*State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231 (June 28, 2000), citing *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998).

{¶ 9} As we see it, both factors are present in this case. The fire marshal provided the records after the Cincinnati Enquirer filed its mandamus action. The fire marshal argued that the conclusion of the criminal trials allowed for the release of the records. While the conclusion of the criminal proceedings and the release of the records truncated

the Cincinnati Enquirer's ability to fully litigate its mandamus claim, we recognize that the Cincinnati Enquirer and other media outlets are likely to request future fire marshal's incident reports in other cases and that the fire marshal will continue to withhold them for the reasons argued in this and other litigation. We thus conclude that the Cincinnati Enquirer's claim is not moot.

## III. OBJECTIONS TO THE MAGISTRATE'S DECISION

{¶ 10} The fire marshal presents five specific objections to the magistrate's decision and requests that this court find the fire investigation report, including all incorporated supporting records, to be a confidential law enforcement investigatory record and thereby exempt from release in response to a public records request. The fire marshal's specific objections to the magistrate's decision are:

> [1.] Findings of Fact Nos. 6 and 11 are incomplete. In addition to the duty to prepare a report and the authority to arrest, the sections the Magistrate cites also specify that the Fire Marshal has the duty to investigate the origin and cause of fires, to look for and compile evidence of crimes, and to assist in the prosecution of suspected arsonists.

> [2.] In Finding of Fact No. 12, the Magistrate fails to recognize and find that, as a result of Investigator Dunn's telephone conversation with Hamilton Fire Department Investigator Trevor Snider, Investigator Dunn knew, prior to setting foot on the scene, that the crime of breaking and entering had been committed. Moreover, the magistrate did not recognize the purpose of the investigation was to prepare for a criminal trial.

> [3.] In Finding of Fact No. 29, the Magistrate assumes that the *Cincinnati Enquirer's* request for the "report," was limited to the Origin and Cause Report contained on pages 9-13 of the *in camera* submission, but the Fire Marshal considered the Origin and Cause Report and all of the supporting materials to be the "Report" in its entirety. Accordingly, the Magistrate failed to determine whether the supporting material is considered a confidential law enforcement investigatory record.

> [4.] On pages 11 and 12 of the Decision, the Magistrate ignores the fact that Investigator Dunn was aware, since before setting foot on the fire scene, that a crime had been committed. Accordingly, the Magistrate incorrectly determined that the Origin and Cause Report "is not specifically compiled in

reasonable anticipation of, or in defense of, a civil or criminal action or proceeding.

[5.] The Magistrate, on pages 12 and 13, incorrectly determines that the entire contents of the Origin and Cause Report are not "essential to its effective use in further investigation by law enforcement personnel." Rather, Investigator Dunn's personal professional thoughts and analysis of an arson (that resulted in the death of a firefighter) have concrete investigatory value and are strewn throughout the report and cannot be redacted prior to release to the public.

{¶ 11} The Cincinnati Enquirer presents two counter-objections to the magistrate's decision:

[1.] The Court should adopt the Magistrate's Decision granting The Enquirer a writ of mandamus to compel Respondent to comply with its obligations under R.C. 149.43(B), but modify the Decision to award The Enquirer all court costs under R.C. 149.43(C)(3)(a)(i).

[2.] The Court should adopt the Magistrate's Decision granting The Enquirer a writ of mandamus to compel Respondent to comply with its obligations under R.C. 149.43(B), but modify the Decision to award The Enquirer its reasonable attorney's fees under R.C. 149.43(C)(3).

## IV.  LAW AND DISCUSSION
### A.  Standard of Review

{¶ 12} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Comm. For Responsible Medicine v. Bd. of Trustees of Ohio State Univ.*, 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 6. The Cincinnati Enquirer must demonstrate entitlement to the writ by clear and convincing evidence. *State ex rel. Cleveland Right to Life v. State Controlling Bd.*, 138 Ohio St.3d 57, 2013-Ohio-5632, ¶ 2. Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), syllabus. Further, unlike other mandamus cases, "[r]elators in public-record mandamus cases need not establish the lack

of an adequate remedy in the ordinary course of law." *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, ¶ 25. R.C. 149.43 is construed liberally in favor of broad access as we resolve any doubt in favor of disclosure. *Toledo Blade*, 2008-Ohio-6253, at ¶ 17.

{¶ 13} Civ.R. 53(D)(4)(d) provides that, "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

### B. Magistrate's Decision

{¶ 14} The magistrate concluded that materials obtainable through criminal discovery remain exempt from public records requests except through Crim.R. 16 proceedings. And the magistrate rejected the fire marshal's contention that, from the moment its Fire and Explosion Investigator set foot on the crime scene, the investigator's work was in preparation for a criminal trial, making the ensuing incident report exempt from release under either the trial preparation records exception or the CLEIR exception, essentially merged by their operation. Instead, the magistrate found the incident report not to be specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, making the trial preparation records exception inapplicable. In accord with this finding, the magistrate found that the five-page incident report is a public record, but one that is not entirely exempt under the CLEIR exception, and the magistrate found in favor of its release, with certain redactions.

### C. The State Fire Marshal's Objections

{¶ 15} The fire marshal's five objections follow the same theme that the incident report fits within an exception to the public records request because of the timing of its creation: it was created after the investigator knew that a crime had been committed and by virtue of time, it became a trial preparation record such that the CLEIR exception applies.

{¶ 16} The fire marshal argues that under R.C. 3737.22(C), the fire marshal is responsible "for the investigation of the cause, origin, and circumstances of fires and explosions in the state, and for the assistance in the prosecution of persons believed to be guilty of arson or a similar crime." The fire marshal argues that, because this section, along

with R.C. 3737.26 and 2935.03(A)(2), imposes a duty on the fire marshal to investigate fires and arrest offenders, and mandates that the fire marshal investigate crimes associated with fires and explosions, that the resulting records created by the fire marshal are "[m]ore than just a simple report" and become "a crucial part of the criminal prosecution file." (Fire Marshal Objs. at 7.)

{¶ 17} R.C. 149.43 of the Ohio's Public Records Act mandates that requestors have full access to public records unless one of the enumerated exceptions applies to the requested records. The fire marshal does not dispute that the incident report is a public record kept by a public office. However, the fire marshal contends that the requested incident report falls within the CLEIR exception and is not subject to disclosure or it constitutes trial preparation materials that are likewise exempt from disclosure. As the magistrate noted, "[e]xceptions to disclosure under the act are strictly construed against the record's custodian, who has the burden to establish the applicability of any claimed exception." *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, ¶ 15.

{¶ 18} The exception for trial preparation records is provided in R.C. 149.43(A)(1)(g). Trial preparation records are defined in R.C. 149.43(A)(4) as "any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney."

{¶ 19} The duty to investigate fires arises from R.C. 3737.24, which provides that the fire marshal "shall investigate the cause, origin, and circumstances of each major fire." Ohio Adm.Code 1301:7-7-01(D)(b)(ii)(10) provides that "For the purposes of section 149.43 of the Revised Code, such investigations shall be considered law enforcement matters of a criminal, quasi-criminal, civil or administrative nature." A "major fire" is defined in Ohio Adm.Code 1301:7-7-01(D)(b)(ii)(10)(b) and the Hamilton, Ohio fire qualifies as "major" because of the firefighter's death. *See* Ohio Adm.Code 1301:7-7-01(D)(b)(ii)(10)(b)(i).

{¶ 20} The duty to investigate a major fire does not necessarily transform every document into a record that contains information specifically compiled in reasonable anticipation of a criminal proceeding. The fire marshal argues that because the investigator knew prior to setting foot on the fire scene that the crime of breaking and entering had been

committed, the per se purpose of the investigation was to prepare for a criminal trial. We disagree. The investigator testified that all investigations are conducted using the same methodology and he treats every fire investigation as a crime scene until he can prove otherwise. (Dunn dep. at 30.) The Chief of the Fire and Explosion Investigation Bureau confirmed that all investigations are treated as crimes from their inceptions. (Hobbs dep. at 26.) In every case, an incident report is generated and completed. (Hobbs dep. at 36.)

{¶ 21} The Supreme Court of Ohio has held that "when an investigation has multiple purposes, the records of the investigation cannot be said to be trial preparation records." *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 502 (1992). And the mere fact that something becomes part of the prosecution's file eventually, does not transform it into a trial-preparation record. "Not every record within a prosecutor's file is an exempt 'trial preparation record.' " *State ex rel. Carpenter v. Tubbs Jones*, 72 Ohio St.3d 579, 580 (1995). We agree with the magistrate that the incident report was not specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding and that the trial preparation records exception under R.C. 149.43(A)(1)(g) does not apply to it.

{¶ 22} The CLEIR exception was created in R.C. 149.43(A)(1)(h). R.C. 149.43(A)(2) defines CLEIR as:

> (2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
> (a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;
>
> (b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;
>
> (c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

{¶ 23} The fire marshal argues that the incident report is protected by R.C. 149.43(A)(2)(c). For this exception to apply, the fire marshal must "establish that each of the withheld [documents] 'pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature,' and that its release would create a high probability of disclosure of specific confidential investigatory techniques or procedures or specific work product." *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, ¶ 38, quoting R.C. 149.43(A)(2).

{¶ 24} The documents meet the first part of the test because they pertain to a law-enforcement matter of a criminal or quasi-criminal nature. As stated, Ohio Adm.Code 1301:7-7-01(D) designates investigations into major fires as law enforcement matters of a criminal, quasi-criminal, civil, or administrative nature for purposes of R.C. 149.43. However, documents that merely pertain to a law-enforcement matter do not necessarily constitute a confidential law-enforcement investigatory record unless the release of the record would create a high probability of disclosure of specific investigatory work product. *Cincinnati Enquirer v. Pub. Safety* at ¶ 40. R.C. 149.43 does not define "specific investigatory work product." The protection for work product emanates from a concern that investigators and prosecutors should be free to gather, assemble, and prepare case information and theories " 'without undue and needless interference.' " *Steckman v. Jackson*, 70 Ohio St.3d 420, 434, quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), *superseded by statute*. Since *Steckman*, the Supreme Court has "clarified that the investigative-work-product rule is a 'very narrow exception[] to R.C. 149.43' that 'applies to actual pending or highly probable criminal prosecutions.' " *Cincinnati Enquirer v. Pub. Safety* at ¶ 42, quoting *State ex rel. Police Officers for Equal Rights v. Lashutka*, 72 Ohio St.3d 185, 188 (1995).

{¶ 25} In *Steckman*, the Supreme Court recognized that the work-product exception as found in R.C. 149.43 does not automatically shield all potential evidence of criminal activity from disclosure. Routine offense and incident reports were not included in the work-product exception. Incident reports "initiate criminal investigations but are not part of the investigation." *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91

Ohio St.3d 54, 56 (2001). Police reports are subject to disclosure. *Id.* However, *Maurer* was clarified in that not "all police offense and incident reports are subject to disclosure notwithstanding the applicability of any exemption." *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, ¶ 55-56, *superseded by statute.* Police incident reports may be redacted to eliminate personal information. *Id.* Routine offense and incident reports are public records and are "normally subject to immediate release upon request." *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, ¶ 13.

{¶ 26} In *Cincinnati Enquirer v. Pub. Safety* at ¶ 45, the Supreme Court found that the trial-preparation exception does not cover those records generated on a routine basis, such as offense and incident reports. In *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, the Supreme Court determined that "the specific-investigatory-work-product exception of R.C. 149.43(A)(2)(c) does not extend beyond the completion of the trial for which the information was gathered" and overruled *Steckman* to that extent. *Caster* at ¶ 47.

{¶ 27} The incident report at issue is a five-page report consisting of two pages that are formatted with fill-in-the-blanks, one page is narrative background information and two pages are for narrative including "Origin Analysis" and "Cause Determination."[1] The magistrate determined that the narrative under the heading "Cause Determination" contains the investigator's conclusions and certain additional information regarding the source and origin of the fire. This section is investigatory work product whose value would be lost if it was prematurely disclosed. Thus, the magistrate concluded that the narrative section "Cause Determination" may be redacted from the incident report but the remainder of the incident report should have been released. The narrative under the heading "Cause Determination" "is clearly investigatory work product whose value to investigators will be lost if it is prematurely disclosed." (App'x at ¶ 100.)

{¶ 28} The fire marshal argues that five matters from the background information related to the incident report would cause the report to lose its investigative value if they

---

[1] On April 27, 2017, the fire marshal submitted a binder containing further documents for in camera review. The binder contains an inventory of documents, a cover sheet and various reports, forms, and communications that were compiled in the investigation. It is numbered from pages 1 to 609, minus pages 58-454, which the fire marshal contends are not reviewable by the court even on an in camera basis. The incident report constitutes pages 9-13 of the binder submitted for in camera review.

were disclosed.[2]  These items include information that the alarm was activated and the information related to the alarm, including forced entry and the interior motion alarm activation; that samples were sent to the forensic lab for analysis; that the house was unoccupied and the doors secured, other than the exterior basement access; the description of the interior and exterior and the damage, including the missing lock and that the broken cellar hatchway metal hasp was forced; and descriptions of locations that samples to be analyzed were taken.

{¶ 29} The magistrate decided that the "Cause Determination" section should be redacted before disclosure because that section contains the investigator's conclusions and information regarding the source and origin of the fire.  However, the "Origin Analysis" also contains the information.  It clearly described why certain areas were eliminated as the origin of the fire and also described the origin of the fire.  The "Origin Analysis" also explains the investigator's conclusions.  Because we agree with the magistrate's conclusions regarding information on the source and origin of the fire, we hold that the "Origin Analysis" portion of the incident report also must be redacted.  We hold that the remaining items in the incident report do not include investigatory analysis to warrant redaction.  The fire marshal's first, second, fourth and fifth objections seeking non-production of information relating to the "Origin Analysis" are sustained, but the other arguments contained in those objections are overruled.

{¶ 30} In his third objection, the fire marshal argues that the Cincinnati Enquirer's request for the incident report was not limited to the five pages we have discussed (pages 9-13 of the in camera review binder).  The fire marshal argues that the magistrate erred in not considering whether all of the supporting materials to the incident report are part of the entire report.  We disagree.  The Cincinnati Enquirer did not seek and does not now seek any portion of the report other than the five pages (pages 9-13 of the in camera review binder).  No other portions or supporting documents were at issue before the magistrate and the magistrate did not err in not considering whether the supporting material is considered a confidential law enforcement investigatory record.  *See, e.g., Ashtabula Cty. Joint Vocational School v. O'Brien*, 11th Dist. No. 2004-A-0092, 2006-Ohio-1794, ¶ 29

---

[2] The fire marshal's other items raised in the objection contending they are covered by the CLEIR exception are items that appear in documents that the Cincinnati Enquirer did not seek and the magistrate did not order disclosed.

("Nor is this court inclined to issue an advisory opinion with respect to future controversies between the parties that are not now before us. Such would not be a justiciable controversy as the Supreme Court of Ohio has defined it.").

{¶ 31} The fire marshal's third objection is overruled.

## D. The Cincinnati Enquirer's Objections

{¶ 32} The Cincinnati Enquirer filed two objections to the magistrate's decision arguing that we should modify the decision to award the Cincinnati Enquirer costs under R.C. 149.43(C)(3)(a)(i) and reasonable attorney fees under R.C. 149.43(C)(3). The magistrate denied an award of attorney fees because he found that the fire marshal did not withhold the documents in bad faith, given the undefined nature of the law regarding fire marshal incident reports as it existed prior to this action and because the magistrate determined that part of the incident report may be redacted before its release. The magistrate concluded that the fire marshal had a good-faith basis for withholding the requested document and denied the Cincinnati Enquirer's request for attorney fees.

{¶ 33} Under the applicable version of the statute, R.C. 149.43(C)(2)(b) provides that "[i]If the court orders the public office or the person responsible for the public record to comply with division (B) of this section, the court may award reasonable attorney's fees subject to reduction as described in division (C)(2)(c) of this section."[3] "Court costs and reasonable attorney's fees awarded under this section shall be construed as remedial and not punitive." R.C. 149.43(C)(2)(c).[4]

{¶ 34} In *Cincinnati Enquirer v. Pub. Safety*, the Supreme Court analyzed attorney fees under a similar version of R.C. 149.43, where R.C. 149.43(C)(2)(b) authorized a discretionary award of reasonable attorney fees. In that case, the court recognized that "a court may consider the presence of a public benefit conferred by a relator seeking the

---

[3] In *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, the Supreme Court of Ohio determined that the version of R.C. 149.43 in effect at the time of the original records request is the applicable version. R.C. 149.43 was amended effective September 28, 2016. *See* 2015 Ohio HB No. 317. This is the applicable version since the request at issue was made on December 16, 2016.

[4] R.C. 149.43(C)(2)(b) provided circumstances where the court must award attorney fees to the aggrieved person in the mandamus action if the court renders a judgment that orders production of the records and if one of two conditions exist. Either (1) the public office failed to respond affirmatively or negatively to the request within the time allowed, or (2) the public office promised to permit the relator to inspect or receive copies of the public records but failed to fulfill the promise within the time allowed. *See State ex rel. DiFranco v. Euclid*, 138 Ohio St.3d 378, 2014-Ohio-539. Neither condition exists here, rendering the award of attorney fees discretionary.

disclosure and the reasonableness and good faith of a respondent in refusing to disclose." *Id.* at ¶ 53, citing *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, ¶ 33-34. In *Doe v. Smith*, the high court denied the Cincinnati Enquirer's request for attorney fees because the respondents acted reasonably and in good faith in withholding the public record until the conclusion of all probable or pending criminal proceedings. The respondents had relied on a case of first impression and the only Ohio decision at the time to squarely address the issue involved in the case. The high court found the respondents had operated on a reasonable, good-faith belief, based on existing case law.

{¶ 35} Here, the magistrate acknowledged that the law regarding fire marshal incident reports was largely undefined. But, given its similarity to police incident reports that require production with redactions, the magistrate found that the fire marshal should not have denied the request entirely. The award the Cincinnati Enquirer seeks must be examined in a remedial and not punitive light. Under R.C. 149.43(C)(2)(c), an award of attorney fees is discretionary.

{¶ 36} We find a public benefit to the Cincinnati Enquirer's request for the incident report of the Hamilton, Ohio fire in which a firefighter died while attempting to secure public safety from the fire. The Cincinnati Enquirer publishes a newspaper; securing this record enables it to provide " 'complete and accurate news reports * * * to the public.' " *Mauer*, 91 Ohio St.3d at 58, quoting *State ex rel. Multimedia, Inc. v. Whalen,* 51 Ohio St.3d 99, 100 (1990). However, given the uncertainty of the law regarding fire marshal incident reports as it existed prior to this action, the magistrate's finding that the fire marshal withheld the report in good faith and the finding that only portions of the report may be redacted, we agree with the magistrate that the fire marshal had a good-faith basis to withhold the report and deny the Cincinnati Enquirer's request for attorney fees. Accordingly, the Cincinnati Enquirer's second objection to the magistrate's decision is overruled.

{¶ 37} The Cincinnati Enquirer also requested an award of court costs according to R.C. 149.43(C)(3)(a)(i).[5] The magistrate made no express determination regarding the issue of costs, despite the specific request in the mandamus complaint. Former R.C. 149.43 requires a relator to transmit a written request for a public record by hand delivery or

---

[5] R.C. 149.43(C)(3)(c) is the appropriate section in the applicable version of R.C. 149.43.

certified mail as a prerequisite to recovery of statutory damages and court costs. Former R.C. 149.43(C)(1) in effect at the time of relator's request provided:

> If a requestor transmits a written request by hand delivery or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requestor shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

{¶ 38} Former R.C. 149.43(C)(2)(a) provided for court costs:

> If the court issues a writ of mandamus that orders the public office or the person responsible for the public record to comply with division (B) of this section and determines that the circumstances described in division (C)(1) of this section exist, the court shall determine and award to the relator all court costs.

{¶ 39} The "circumstances described in division (C)(1)" include the relator's transmission of a written request by hand delivery or certified mail.

{¶ 40} *Cincinnati Enquirer v. Pub. Safety* at ¶ 56. The Cincinnati Enquirer argues that if a court issues a writ of mandamus ordering the public office to comply with R.C. 149.43(B) then an award of court costs is mandatory. However, the Cincinnati Enquirer does not cite the applicable version of the statute.

{¶ 41} Here, the Cincinnati Enquirer did not transmit its request by hand delivery or certified mail. The December 16, 2016 request was delivered via e-mail. We acknowledge that the statute is not contemporary to communication methods largely used today, such as e-mail. However, the requirements are specific. Unless and until they are changed by the Ohio General Assembly, we are obliged to find that the Cincinnati Enquirer did not comply with the threshold requirements for recovering statutory damages and court costs and thus is not entitled to recover them in whole or in part. The Cincinnati Enquirer's first objection regarding court costs is overruled.

## V. CONCLUSION

{¶ 42} Following an examination of the magistrate's decision, an independent review of the evidence under Civ.R. 53, and due consideration of the parties' objections, we

adopt the magistrate's findings of fact as our own.  But for the reasons stated in this decision, we modify the magistrate's decision in granting the writ of mandamus and order further redactions as stated in this decision, thereby sustaining the fire marshal's first, second, fourth, and fifth objections regarding the "Origin Analysis" as to arguments calling for that result and overrule the other arguments in those objections and the fire marshal's third objection in its entirety.  We overrule the Cincinnati Enquirer's second objection regarding attorney fees and overrule its first objection regarding court costs.

*Respondent's objections sustained in part and overruled in part;*
*Relator's objections overruled;*
*and writ granted.*

**BROWN and LUPER SCHUSTER, JJ., concur.**

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

The State ex rel. The Cincinnati Enquirer,    :
A Division of Gannett GP Media, Inc.,
                                              :
            Relator,
                                              :
v.                                                          No. 17AP-63
                                              :
Ohio Department of Commerce,                               (REGULAR CALENDAR)
Division of State Fire Marshal,               :

            Respondent.                       :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 21, 2017

---

*Graydon Head & Ritchey LLP*, *John C. Greiner,* and *Darren W. Ford*, for relator.

*Michael DeWine*, Attorney General, *Hilary Damaser*, *Keith O'Korn*, and *Sarah Pierce*, for respondent.

---

IN MANDAMUS

{¶ 43} Relator, The Cincinnati Enquirer, a Division of Gannett GP Media, Inc., ("Enquirer"), brings this action in mandamus seeking a writ compelling respondent, the Ohio Department of Commerce, Division of State Fire Marshal ("fire marshal"), to comply with relator's public records request under R.C. 149.43(B)(1). The record at issue is the "Fire and Explosion Investigation Bureau Incident Report" prepared by the fire marshal in connection with a fire in Hamilton, Ohio, that resulted in the death of a firefighter and criminal charges of arson and murder against two persons allegedly responsible for the blaze. The fire marshal asserts that the incident report is protected by the Confidential Law Enforcement Investigatory Records ("CLEIR") exception to the Public Records Act, or by the exception for trial preparation records.

**FINDINGS OF FACT:**

{¶ 44} 1.   Relator publishes the Cincinnati Enquirer, a newspaper of general circulation in the greater Cincinnati, Ohio area.

{¶ 45} 2.  Respondent, Ohio Department of Commerce, is a state regulatory agency and the fire marshal is a division thereof.

{¶ 46} 3.  The fire marshal is "a public office" within the meaning of R.C. 149.011(A).

{¶ 47} 4.  On December 28, 2015, a house fire at 1310 Pater Avenue, in Hamilton, Ohio, killed Hamilton City Fire Department Firefighter Patrick Wolterman, who was fighting the blaze.

{¶ 48} 5.  Due to the firefighter's death, the Hamilton fire qualified as a "major fire" under the pertinent section of the Ohio Fire Code, Ohio Adm.Code 1301:7-7-01(D)(10)(b).

{¶ 49} 6.  Pursuant to R.C. 3737.24, the fire marshal is required to prepare a written statement of all facts relating to the cause and origin of major fires.

{¶ 50} 7.  Chief Deputy Fire Marshal Joshua Hobbs is the bureau chief of the fire marshal's Fire and Explosion Investigation Bureau, formerly known as the Arson Bureau. Under R.C. 3737.22(C), the bureau investigates fires throughout Ohio and provides assistance for prosecution of criminal conduct related to fires.

{¶ 51} 8.   Chief Hobbs received an e-mail notification of fire at 2:16 a.m., December 28, 2015.  Chief Hobbs thereafter contacted the Hamilton Fire Department, which requested investigatory assistance.  (Hobbs' Depo. at 80-83, 87-88.)

{¶ 52} 9. The request for investigation was based upon critical and ultimately fatal injuries suffered by firefighter Wolterman.  (Hobbs' Depo. at 108-09.)

{¶ 53} 10.  Chief Hobbs dispatched Fire and Explosion Investigator Robert Dunn to conduct the investigation in Hamilton.  (Hobbs' Depo. at 89-92.)

{¶ 54} 11.  Both Chief Hobbs and Dunn are qualified as fire and explosion investigators, law enforcement officers, peace officers, and assistant state fire marshals, with   arrest   powers.   R.C.   3737.22;   3737.26;   2901.01(A)(11)(b);   2935.01(B); and 2935.03(A)(2).

{¶ 55} 12.  Dunn spoke with Hamilton Fire Department Investigator Trevor Snyder while en route to the scene.  The information received from Snyder did not cause Dunn to

conduct his investigation into the cause and circumstances of the Hamilton fire differently from his other investigations, regardless of suspected cause.  (Dunn Depo. at 24, 35.)

{¶ 56} 13.   The initial document produced by the fire marshal relating to the Hamilton fire was a Fire Marshal's Incident Notification Report ("notification report"), which lists basic information about a fire, including time, date, place, owner, type of structure, fatalities or injuries, and the requesting local agency.  This opens a case number in the software program that manages the later records associated with the investigation.  (Depo. of Deborah Carter, Admin. Asst. with the Fire Marshal's Fire and Explosions Investigation Dept. at 10-14; Hobbs' Depo. at 62-66, 97-98.)

{¶ 57} 14.   The next, more comprehensive document produced is the Fire and Explosion Investigation Bureau Incident Report ("incident report").  (Dunn Depo. at 8-10; Feb. 25, 2016 Dunn Aff. at ¶ 3-5.)  This contains "the investigator's analysis of the gathered evidence, and the investigator's conclusion as to the origin and cause of the fire." (Dunn Aff. at ¶ 4.)

{¶ 58} 15.  In addition to the notification report and the incident report, the investigation record as a whole comprises scene sketches, search warrants, lab submissions and reports, subpoenas, investigatory findings from other law enforcement agencies, witness statements, and background reports, statements from other law enforcement officers and firefighters, photographs, handwritten notes, background data, and arrest information.  These items are maintained as separate documents but may be referenced and analyzed in the incident report.  (Hobbs' Depo. at 50; Dunn Depo. at 9-11.)

{¶ 59} 16.  The incident report does not contain a rubric or field for noting the fire investigator's thoughts or mental impressions regarding potential criminal charges, or for noting the names of potential criminal suspects.  (In-camera submission at 9-13; Hobbs' Depo. at 37-41, 74-75.)

{¶ 60} 17. On January 4, 2016, a reporter for the Enquirer made a first public records request for the incident report.

{¶ 61} 18. The fire marshal refused the January 4, 2016 public records request.

{¶ 62} 19. The Enquirer initiated a mandamus action in the Supreme Court of Ohio with a complaint filed on February 3, 2016, seeking a writ ordering disclosure of the incident report.

{¶ 63}  20.  The fire marshal moved to dismiss the action in the Supreme Court for failure to state a claim.    The cited basis was that the requested document, the incident report, was not in existence at the time of the Enquirer's January 4, 2016 public records request.  The fire marshal also raised the CLEIR exception in defense of its refusal.  The Supreme Court granted the fire marshal's motion to dismiss the action for failure to state a claim pursuant to Civ.R. 12(B)(6).  *07/27/2016 Case Announcements*, 2016-Ohio-5108. The Supreme Court made its determination of dismissal as a summary pronouncement without opinion. *Id.*

{¶ 64}  21.  On December 16, 2016, a reporter for the Enquirer again requested a copy of the "incident report, (also known as an 'origin and cause report')" for the Hamilton fire. (Joint Ex. B-2.)   The fire marshal again formally denied the request by letter dated December 29, 2016 on the basis that the report was a CLEIR and, thus, did not constitute a public record obtainable under R.C. 149.43(A)(1).  The fire marshal did supply a copy of the initial "incident setup record," which may correspond to the notification report.

{¶ 65}  22.  The Enquirer began this action in the court of appeals with a complaint in mandamus filed January 26, 2017, again seeking production of the incident report.  The Enquirer also seeks an award of reasonable attorney fees and court costs pursuant to R.C. 149.43(C).

{¶ 66}  23.  On January 6, 2017, the Butler County Grand Jury indicted Lester Parker and William Tucker on two counts each of aggravated arson and one count of murder in connection with the Hamilton fire and the death of Firefighter Wolterman.

{¶ 67}  24.  On January 18, 2017, the Butler County Prosecuting Attorney supplied the incident report to Parker pursuant to Crim.R. 16 discovery.

{¶ 68}  25.  The parties to the action have submitted for the magistrate an evidentiary record consisting of an agreed statement of facts not in dispute, and the fruits of discovery in the form of documents, affidavits, and depositions.

{¶ 69}  26.  Pursuant to the magistrate's order of April 27, 2017, the state fire marshal submitted on July 7, 2017 a binder containing further documents for in-camera review.

{¶ 70}  27.   The in-camera review binder consists of the cumulative investigative compilation produced by the fire marshal's office for the Hamilton fire. It contains an

inventory of documents, a cover sheet, and various reports, forms, and communications such as e-mails.  It is page-numbered overall from 1 through 609.

{¶ 71}  28. The fire marshal has omitted pages 58 through 454 of the binder on the basis that the information or documents presented on these pages were obtained through the confidential Ohio Law Enforcement Gateway, Distributed Factual Analysis Criminal Threat Solution, and the Law Enforcement Automated Data System, and for that reason are not reviewable by the court even on an in-camera basis.

{¶ 72}  29. The incident report that was the object of the Enquirer's public records request constitutes only pages 9-13 of the in-camera submission binder.

{¶ 73}  30. Page seven of the in-camera submission binder consists of the e-mail by which Hobbs dispatched Dunn to commence the investigation.  This has already been produced by the fire marshal in response to the Enquirer's public records request.

## DISCUSSION AND CONCLUSIONS OF LAW:

{¶ 74}  The substantive issue in this case is whether the Hamilton fire incident report is legally obtainable through a public records request, or whether the incident report falls within one of the protected exceptions to the Public Records Act.  As a threshold matter, the magistrate must also determine whether the action is barred by res judicata or the law-of-the-case doctrine due to the Supreme Court's prior disposition of a similar action between the same parties.

## Jurisdiction:

{¶ 75}  R.C. 2743.75, enacted by 2017 H.B. No. 49 and effective September 29, 2017, provides that the Court of Claims of Ohio will have concurrent jurisdiction over disputes alleging a denial of access to public records. Despite this new adjudicatory option, a mandamus action under R.C. 149.43(C)(1)(b), whether commenced before or after the effective date of new R.C. 2743.75, remains an alternative remedy after amendment of that section to allow an alternative procedure in the Court of Claims.

{¶ 76}  Thus, as it has in the past, this court has jurisdiction because "mandamus is the appropriate remedy to compel compliance with R.C. 149.43." *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, ¶ 10; *State ex rel. Physicians Comm. for Responsible Medicine v. Bd. of Trustees of Ohio State Univ.*, 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 6.  As with any mandamus action, the relator must establish by clear and

convincing evidence that it has no remedy in the ordinary course of the law, that it has a clear legal right to the requested relief, and that there is a clear legal duty on the part of the respondent to provide the relief. *Id.*

**Res Judicata and Law of the Case:**

{¶ 77} The parties have not raised the question of whether any aspect of this matter is subject to issue preclusion because of the Supreme Court's prior disposition of a related action between the same parties. Although the fire marshal has not raised this as an affirmative defense, the magistrate sua sponte considers the question to avoid rendering a decision in conflict with that of a superior tribunal.

{¶ 78} The law-of-the-case doctrine primarily applies to ensure that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32 (1979). In addition to encompassing a court's adherence to its own prior rulings or the rulings of a superior court in the same case, the law of the case applies to preclude conflicting judgments with the rulings of another judge or court in a "closely related" case. *Klaus v. Klosterman*, 10th Dist. No. 16AP-273, 2016-Ohio-8349, ¶ 14-15, citing *Aguinaga v. United Food & Commercial Workers Intl. Union*, 854 F.Supp. 757, 772 (Kan.1994).

{¶ 79} The doctrine of res judicata involves both claim preclusion and issue preclusion. *Saha v. Research Inst. at Nationwide Children's Hosp.*, 10th Dist. No. 12AP-590, 2013-Ohio-4203, ¶ 23, quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). "Claim preclusion holds that a valid, final judgment on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Dehlendorf v. Ritchey*, 10th Dist. No. 12AP-87, 2012-Ohio-5193, ¶ 13, citing *Grava* at syllabus. "Issue preclusion * * * provides that 'a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.' " *Id.*, quoting *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). "While claim preclusion precludes relitigation of the same cause of action, issue preclusion precludes

relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *Id.*

{¶ 80} To address these issues, the magistrate takes judicial notice of the pleadings and orders in the Supreme Court action, as these are not subject to reasonable dispute, at least insofar as their impact on the present case. Evid.R. 201(B); *State ex rel. Ohio Republican Party v. Fitzgerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, ¶ 18; *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 8.

{¶ 81} The complaint in the present case tracks in most respects the prior February 3, 2016 mandamus complaint before the Supreme Court in case No. 2016-163 that resulted in a dismissal for failure to state a claim. It concerns the same parties and seeks the same type of relief.

{¶ 82} It differs, however, in that it addresses a separate and later request and denial for the public records at issue, and raises an additional basis for relief by presenting a waiver argument based on Crim.R. 16 release to other parties of the contested document. The magistrate concludes that, in the absence of an express determination from the Supreme Court on these issues, the questions have not been "actually and necessarily litigated and determined" so that issue or claim preclusion would apply.

{¶ 83} The fire marshal's motion to dismiss before the Supreme Court relied in part on the assertion that the public records request was premature, an argument that would not apply here but could have been conclusively relied on by the higher court. In the absence of a full opinion expressing the Supreme Court's reasoning, it is difficult to conclude that the balance of the arguments raised were fully passed upon. The magistrate further concludes that the Supreme Court's prior dismissal does not set the law of the case for the present matter and, thus, leaves this court free to reach its own outcome with respect to the most recent public records request by the Enquirer.

**The Public Records Act and Exceptions:**

{¶ 84} Ohio's Public Records Act, codified at R.C. 149.43, mandates that requestors have full access to public records unless the requested records fall within one of the exceptions specifically enumerated in the act. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 170 (2000). "Upon request and subject to division (B)(8) of this section, all public records responsive to the request

shall be promptly prepared and made available for inspection to any person * * *. [U]pon request, a public office or person responsible for public records shall make copies of the requested public records [to furnish the requestor]."  R.C. 149.43(B)(1).  "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.' "  *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 13, quoting *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20. Consistently with this policy, courts will construe R.C. 149.43 liberally in favor of broad access and resolve all doubts in favor of disclosure of the requested public records.  *Id.*

{¶ 85}  Under R.C. 149.43(A)(1), a " 'public record' means records kept by any public office."  Under R.C. 149.011(G), "[r]ecord" is defined as "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."  A long list of exceptions to these general premises is set forth at R.C. 149.43(A)(1)(a) through (cc).

{¶ 86}  The fire marshal does not dispute that the incident report is, absent an applicable exception, a public record kept by a public office.  The fire marshal claims that the material requested incident report falls squarely within the CLEIR exception under the Public Records Act, or constitutes trial preparation materials that are likewise exempt.  The fire marshal bears the burden of establishing that the requested record falls within these exceptions.  *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, ¶ 10. "Exceptions to disclosure under the act are strictly construed against the record's custodian, who has the burden to establish the applicability of any claimed exception." *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, ____ Ohio St.3d ___, 2017-Ohio-8988, ¶ 15.

{¶ 87}  R.C. 149.43(A)(1)(h) provides the exception for CLEIR records.  These are defined by R.C. 149.43(A):

> (2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;

(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

{¶ 88} The fire marshal specifically invokes R.C. 149.43(A)(2)(c). For this aspect of the CLEIR exception to apply to the requested documents, the fire marshal must therefore establish that the incident report pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, and that release pursuant to a public records request would create a high probability of disclosure of specific confidential investigatory techniques or procedures or specific investigatory work product. *See, e.g., State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, ¶ 38.

{¶ 89} R.C. 149.43(A)(1)(g) provides the exception for trial preparation records. These are defined by R.C. 149.43(A)(4) as "any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney."

{¶ 90} The Enquirer contends that the incident report fits neither exception, but is a "routine incident report" subject to immediate disclosure under *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420 (1994), and *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54 (2001). In the alternative, the Enquirer argues that, to the extent any aspect of the incident report contains exempt information, the fire marshal is required to respond to the public records request with a redacted version of the document, rather

than withhold the entire incident report.  Finally, the Enquirer argues that, assuming an exception applied to the incident report at the time of the initial request, the protected material has now been provided pursuant to Crim.R. 16 discovery to the criminal defendants accused of setting the fire, thereby waiving the public records exceptions.

**Waiver Through Crim.R. 16 Discovery:**

{¶ 91} The magistrate first addresses the discovery and waiver issue, which, if resolved in the Enquirer's favor, would moot the question of whether the CLEIR and trial preparation exceptions apply to the incident report.  The work product exception used in R.C. 149.43(A)(2)(c) reflects the longstanding attorney work product privilege against evidentiary discovery.  *Steckman* at 434:  "[T]he 'work product' concept being transferred, by the General Assembly, from its attorney-client genesis to the area of confidential law enforcement investigatory records."  The Supreme Court went on to state in *Steckman* that, "except as required by Crim.R. 16, information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation."  *Id.* at 435.

{¶ 92} The Enquirer reads this language from *Steckman* as creating an "exception to the exception," compelling a public records release of any materials obtainable through criminal discovery, regardless of any other public records exception. The magistrate does not so read *Steckman*.  To the contrary, the magistrate concludes that the Supreme Court expressed an indication that such information remained exempt from public records requests *except* through Crim.R. 16 proceedings, which are rooted in criminal due process considerations rather than the broader public-interest considerations underlying Ohio public records law.  "Whether [a report] may be admitted * * * at trial and whether it must, almost certainly, be disclosed pursuant to Crim.R. 16 does not answer whether the report meets the [CLEIR] exception for purposes of public-records disclosure." *Pike County Coroner* at ¶ 52.

**Trial Preparation Records Exception**

{¶ 93} The fire marshal invites the court to conclude that, from the moment Dunn set foot on the crime scene, his work was in preparation for criminal trial.  Under this

definition, the CLEIR exception would essentially merge with the trial preparation records exception.

{¶ 94} The initial investigation by Dunn was triggered by Ohio Adm.Code 1301:7-7-01(D)(10)(b), which requires such an investigation upon occurrence of a "major fire." That section does not define a major fire as one of criminal origin, but one that caused or had a substantial risk of causing death or serious physical harm to any persons or damage or destruction to property. It is the conclusion presented in the state fire marshal's incident report, and a determination that the fire was accidental or undetermined or criminal, that determines the fire marshal's position with respect to criminal proceedings and any eventual recommendation to prosecutors. The nature of the incident report is illustrated by Chief Hobbs' own testimony:

> Normally, they will perform the investigation to determine the motive and things like that. They are not gonna put it on the initial, no.
>
> * * *
>
> We won't mention the recommendation of [prosecution] of those charges, generally mention that. We may mention -- we may document within Fire Files or whatever that the type of crime committed, you know, such as an occupied structure would be an aggravated arson, or that kind of thing, or a straight arson on an unoccupied, that kind of thing.
>
> * * *
>
> Our recommendation, generally speaking [for prosecution] * * * we don't type it up unless it is on a format, an online format for Grand Jury submission, where we would type up "this is our case."

Hobbs' Depo. at 33, 38.

{¶ 95} The magistrate finds that the incident report is not specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding. " '[W]hen an investigation has multiple purposes, the records of that investigation cannot be said to be trial preparation records.' " *Sage* at ¶ 14, quoting *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 502 (1992). The trial preparation records exception  under R.C. 149.43(A)(1)(g), does not apply to the incident report.

## CLEIR Exception

{¶ 96} "Whether a document satisfies the [CLEIR] exception is determined by a two-part test: (1) whether the record is a confidential law-enforcement record and (2) whether release of the record would create a high probability of disclosure of any one of the statutorily enumerated types of information that is exempt from public disclosure." *Pike County Coroner* at ¶ 33 (considering autopsy reports pertaining to an ongoing murder investigation). For R.C. 149.43(A)(1)(h), material that threatens to disclose specific confidential investigatory techniques or procedures or specific investigatory work product, the Supreme Court emphasized in *Pike County Coroner* that one important factor is "the value of that information to investigators will be lost if it is prematurely disclosed." *Id.* at ¶ 43, citing *Enquirer v. Dept. of Pub. Safety* at ¶ 45.

{¶ 97} In *Enquirer v. Department of Pub. Safety*, the court examined a request for recordings produced by cameras mounted on the dashboards of Ohio State Highway Patrol cruisers. The trooper whose cruiser generated some of the video recording records observed multiple violations of traffic laws that constituted criminal offenses. The court rejected the respondent's position that all such recordings constituted investigatory work product: "[T]he work-product exception in R.C. 149.43 does not automatically shield all potential evidence of criminal activity from disclosure." *Id.* at ¶ 44. The Supreme Court adopted instead a flexible standard calling for an assessment of "concrete investigative value" for the withheld material. *Id.* at ¶ 45.

{¶ 98} Notably, the analysis in both *Enquirer v. Department of Pub. Safety* and *Pike County Coroner* places little reliance on a factor much emphasized in older cases on the same issue: whether, under *Maurer* and *Steckman*, the requested document is a "routine incident report" that "initiates" criminal investigation, but is not part of the investigation proper. *Maurer* at 56.

{¶ 99} Applying the recent controlling case law to the facts before the court, the magistrate concludes the fire marshal has not demonstrated that the continued confidentiality of the contents of the entire incident report is "essential to its effective use in further investigation by law enforcement personnel." *Dayton Newspapers, Inc. v. Rauch*, 12 Ohio St.3d 100, 101 (1984). "Respondents' blanket assertion of privilege * * * is at odds with the well-settled understanding that investigatory work product is entitled to

qualified, not absolute, protection from disclosure." *Enquirer v. Dept. of Pub. Safety* at ¶ 43.

{¶ 100}     The magistrate finds that the five-page incident report, which consists of two-page formatted portions with brief informational boxes, a one-page narrative of background information, and a two-page narrative of "Origin Analysis" and "Cause Determination," constitutes a public record that is not entirely exempt under the CLEIR exception.     The narrative under "Cause Determination," however, contains the investigator's conclusions and certain additional information regarding the source and origin of the fire.     This section is clearly investigatory work product whose value to investigators will be lost if it is prematurely disclosed.     The narrative section captioned "Cause Determination" may be redacted from the incident report before it is furnished to the Enquirer.

{¶ 101}     The Enquirer has also requested, in addition to release of the requested records, the writ order payments of attorney fees.  R.C. 149.43(C)(1) provides for an award of attorney fees as follows:

> If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may do only one of the following, and not both:
>
> (a) File a complaint with the clerk of the court of claims or the clerk of the court of common pleas under section 2743.75 of the Revised Code;
>
> (b) Commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(2) of this section.

"Reasonable attorney's fees awarded under R.C. 149.43(C) shall be construed as remedial and not punitive."  R.C. 149.43(C)(2)(c); *State ex rel. Citizens for Open, Responsive &*

*Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, ¶ 24. After reviewing the facts of the case, the magistrate finds that an award of attorney fees is not warranted for the following reasons. The magistrate finds the fire marshal did not withhold the documents in bad faith, given the undefined law on fire marshal incident reports prior to this action, and the magistrate's decision that part of the incident report may be redacted before disclosing the balance of this public record. The magistrate concludes that overall the fire marshal had a good-faith basis for withholding the document requested, and denies the Enquirer's request for attorney fees. *See generally*, *Enquirer v. Dept. of Pub. Safety* at ¶ 53-54.

{¶ 102}        In conclusion, it is the magistrate's decision that a writ of mandamus shall issue ordering respondent, the state fire marshal, to release the incident report in response to the Enquirer's public records request, with redactions as set forth above. The writ shall not include an order granting the Enquirer's request for attorney fees. The magistrate will retain custody of the in-camera submission pending review of the matter by the court and entry of final judgment.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).